RODDA, Respondent, *v.* BEST et al., Appellants.

(No. 5,295.)

(Submitted June 1, 1923. Decided July 9, 1923.)

[217 Pac. 669.]

*Injunction—Water Rights—Ditch Rights—Easements by Grant — Abandonment — Possession — Presumptions — Tenants in Common.*

Water Rights—Easements—Ditch Rights—Abandonment—Intent.
1. In an action by the owner of a ditch to enjoin its use by another, *held* under the rule that to constitute an abandonment an intent to abandon must exist, that a finding that plaintiff had not at any time abandoned his right to the possession and use of it was supported by the evidence.

Same—Easement by Grant—Disuse for Statutory Period—Effect.
2. Where an irrigation ditch was originally constructed over the public domain by the predecessors of the owner, the latter by virtue of section 2339, United States Compiled Statutes, acquired his right to maintain it by grant from the United States and not by enjoyment, and hence his right was not subject to extinguishment by disuse for a period of ten years, as provided by section 6759, subdivision 4, Revised Codes of 1921, in case of a servitude acquired by enjoyment.

Same—Easement Acquired by Grant—Possession—Presumptions.
3. Where the predecessor of the owner of a ditch right had acquired title to the right of way therefor over the public domain by grant from the United States (see par. 2 above), it will be presumed in the absence of evidence to the contrary, under section 9018, Revised Codes of 1921, in an action to enjoin its use by another, that the owner had been possessed thereof within the time required by law and that the occupation by the other party had been in subordination to the legal title, as against the contention that the right was barred by section 9015 in that neither plaintiff nor his predecessor had been in possession or seised of the ditch within ten years next preceding the commencement of the action.

Same—Extinguishment of Easement Acquired by Grant—Essentials.
4. To extinguish an easement by grant there must be some conduct on the part of the owner of the servient estate adverse to and in defiance of the easement and the resultant nonuse must continue for the statutory period of limitation, nothing short of an adverse and hostile use of the servient estate, inconsistent with the rights of the owner of the easement, being sufficient to start the running of the statute to defeat his rights.

Same—Tenants in Common—Rights of Each.
5. Where plaintiff in an action to enjoin another from using an irrigation ditch owned only an undivided interest therein, de-

---

1. Abandonment or loss of rights of prior appropriations of water, see note in 30 L. R. A. 265.

fendant over whose land it ran owning the remaining interest, they were tenants in common entitling each to use it, each being bound to exercise his right so as not to interfere wth the right of the other.

Same—Easements—Use by Owner of Servient Estate.

6. Ownership of an easement over another's land is not necessarily inconsistent with a like use by the land owner of the servient estate so long. as such use is subordinate to the easement and does not restrict or limit its exercise.

*Appeal from District Court, Lewis & Clark County; W. H. Poorman, Judge.*

ACTION for an injunction by Grant L. Rodda against James Best and others. From a decree for plaintiff, defendants appeal. Modified and affirmed.

*Mr. Henry C. Smith,* for Appellants, submitted a brief and argued the cause orally.

Defendants Best and Holding own the land in question. This gives them the right to its possession with the plaintiff. That tenants in common are equally entitled to the use, benefit and possession of the common property and may exercise acts of ownership in regard thereto, is elementary. (38 Cyc. 17; *City of Telluride* v. *Davis,* 33 Colo. 355, 108 Am. St. Rep. 101, 80 Pac. 1051.) The owner of an undivided interest in land has no right to use any part thereof to the exclusion of his cotenant, and if he attempts or threatens to do so he may be enjoined. (Sec. 9091, Rev. Codes 1921; *Connole* v. *Boston & M. etc. Min. Co.,* 20 Mont. 523, 52 Pac. 263; *Butte & B. etc. Min. Co.* v. *Montana O. P. Co.,* 21 Mont. 539, 55 Pac. 112.) So that Best and his codefendants, who are using the ditch with his permission, cannot be enjoined from so doing on complaint of Rodda. Not any of the defendants has ever prevented Rodda from using the ditch, as he has never been able to use it since the flume over the Prickly Pear was destroyed. We submit, therefore, that this action cannot be maintained by Rodda against any owner of the soil over which the ditch runs, or against anyone who is using the ditch with the permission of the person having the legal title to the ground.

Any other holding by this court would mean that Best cannot use his own land, although Rodda's one-fourth interest in the ditch is the only easement outstanding against it.

We of course recognize the case of *Moore* v. *Sherman*, 52 Mont. 542, 159 Pac. 966, and section 7094, Revised Codes of 1921, as authority for the doctrine that abandonment is a matter of intention. All courts so hold, regardless of statutory provisions. But does there never come a time when a claimant's mere oral declaration that he did not intend to abandon shall be overcome and outweighed by his acts and failure to act, covering a period of more than a decade? Or shall a course of conduct covering a period of fifteen years be adjudged to overcome his bald statement that he never intended to abandon? Has circumstantial evidence lost all weight and evidentiary value? If not, then the plaintiff in this case, on his own testimony, has lost all right in the Gamer ditch south of Little Prickly Pear Creek.

We contend that judging human motives and intentions by human actions and conduct, this record discloses that Rodda bought this water right for use where he needed the water, to-wit, on his ranch; that he abandoned and intended to abandon the ditch south of that place, and that his present declaration, which he produces no evidence to corroborate, that he may some time in the future acquire some reservoir sites, and store and sell water, that is to say, engage in a commercial enterprise, as he himself declares, is not sufficient to overcome the presumption of abandonment based on the record of his actions for the past fifteen years. It is significant that during the three years since this action was commenced, he has made no effort to carry out his alleged schemes. (*Toohey* v. *Campbell,* 24 Mont. 13, 60 Pac. 396.)

Since the original easement for the Gamer ditch is real property, an incorporeal hereditament, the plaintiff cannot maintain this action, for the reason that he has not been seised or possessed of the property in question within ten years before the commencement of this action. The statute (sec. 9015,

Rev. Codes 1921) applies to water rights. (*Woodman* v. *Gur-ringer,* 1 Mont. 535.)

The proof is undisputed that plaintiff has not used the ditch at the place in question for over ten years. He has never used it. Section 6759, Revised Codes of 1921, reads as follows: "A servitude is extinguished * * * 4. When the servitude was acquired by enjoyment, by disuse thereof by the owner of the servitude for the period prescribed for acquiring title by enjoyment." This period is ten years in Montana. We suggest the following interpretation for this statute: The word "enjoyment" as therein used should not be given the technical restricted meaning of "prescription." It means a great deal more than that. It means by permission or sufferance of the owner of the fee.

*Mr. Frank W. Mettler,* for Respondent, submitted a brief and argued the cause orally.

The argument of appellants upon the question of abandonment is fundamentally unsound, because it is based upon the erroneous assumption that the rights of the owner of a ditch are acquired and held in the same manner as those of a water user—that is, by continuous use for a beneficial purpose. By the same reasoning the defendants might justify the appropriation of horses of plaintiff running out on the range, by roping and breaking them, and hitching them to a plow, which would be "a useful and beneficial purpose," but it is apprehended that such a defense would not avail upon a prosecution of defendants for larceny.

A canal, ditch or aqueduct, that is, the physical structure or excavation itself, is distinct from the right enjoyed or maintained, is not an easement, nor an incorporeal hereditament, nor an appurtenance to land, but is real estate, which must be sold and conveyed with the same formalities as are required in transfers of other realty. (40 Cyc. 661–662, and notes, citing *Barkley* v. *Tieleke,* 2 Mont. 59; *Donnell* v. *Hum-*

*phreys,* 1 Mont. 518; 1 Wiel on Water Rights, 280, 455, 456; *McDonnell* v. *Huffine,* 44 Mont. 411, 120 Pac. 792.)

Lateral irrigation ditches constructed over open public lands for the purpose of conducting water for irrigation purposes imposes an easement upon the lands; the subsequent entryman upon such lands takes them burdened with the easement, and the successors in interest of such entryman take such lands subject to the same easement. (*Lowry* v. *Carrier,* 55 Mont. 392, 177 Pac. 756.) To abandon land, the owner must leave it free to the occupation of the next comer, whoever he may be, without any intention to repossess it, or reclaim it for himself, in any event, and regardless and indifferent as to what may become of it in the future. ("Abandonment," 1 C. J., sec. 7.) There must be a concurrence of act and intent, *viz.,* the act of leaving the premises or property vacant, so that it may be appropriated by the next comer, and the intention of not returning. The mere intention to abandon, if not coupled with yielding of possession or a cessation of user, is not sufficient; nor will the nonuser alone without an intention to abandon be held to amount to an abandonment. (*Utt* v. *Frey,* 106 Cal. 392, 397, 39 Pac. 807.)

Corporeal hereditaments acquired by user may be lost by nonuser continued for the time required for their acquisition; but incorporeal hereditaments acquired by deed cannot be lost by nonuser unless there is also shown some adverse possession, or loss of title in some of the ways recognized by law, or the destruction of the easement, or some act of the owner making its legitimate use impossible, or some other unequivocal act showing an intention permanently to abandon the same, and often accompanied by some act creating an estoppel. ("Abandonment," 1 C. J., sec. 14; see, also, sec. 11.)

MR. JUSTICE STARK delivered the opinion of the court.

The material facts involved in this case are practically undisputed and will be most easily understood by reference to

the following plat, which is taken from a map introduced in evidence at the trial.

Canyon Creek comes out of the mountains to the north, flowing in a southerly direction to a point near the northeast corner of section 6, township 12 north, range 5 west, where it turns and runs southeasterly across sections 5 and 8. Little Prickly Pear Creek comes in from the west, flowing across the northern part of sections 7 and 8, where the waters of Canyon Creek unite with it. The plaintiff has a ranch embracing sec-

tion 6 upon which he resides. The defendant Best is the owner of the southeast quarter of section 7, and the southwest quarter of this section belongs to Mrs. Holding.

It is not disputed but that in 1882 Joseph Parent and Joseph Hooper made an appropriation of the waters of Canyon Creek, and that a ditch was subsequently constructed for the conveyance of some portion of this water down to section 21, township 11 north, range 3 west, M. P. M., being a distance of about twenty-two miles. At a place about twelve miles from the point of diversion this ditch emptied into Silver Creek, which was used as a ditch for a portion of the remaining distance down to section 21. This ditch where it crosses sections 6 and 7 on the plat is designated as the "Gamer Ditch." It is also undisputed that Fred Gamer acquired some interest in this ditch and water right, which was commonly known as the Canyon Creek water right. On June 6, 1906, Gamer and his wife conveyed the above-mentioned section 21, together with an undivided one-fourth interest in and to the ditch and water right, to the Grand Lodge Charity Fund, a corporation. This title subsequently passed to the Masonic Home of Montana, a corporation, and on December 30, 1913, the latter corporation sold and conveyed to plaintiff all of its right, title and interest in and to the Canyon Creek water right and to the ditch from Canyon Creek to Silver Creek, being the interest therein which passed by conveyance from Gamer to the Grand Lodge Charity Fund.

The defendants have water rights out of Little Prickly Pear Creek and their ditch, which is designated "Gans and Klein Ditch" on the plat, runs at about right angles to the Gamer ditch down to the point marked "Dam," where it was originally flumed across the Gamer ditch, and the two ditches then ran practically parallel to each other across the southerly part of the south half of section 7. At this place there is a hill or "hog back" projecting across the south line of the southeast quarter of section 7 and the contour of the land is such that only one ditch can be constructed around the same, so that

from a place in the Gans and Klein ditch a short distance east of its point of entrance upon the southeast quarter of section 7 it was necessary to carry the water in a flume for several hundred feet. This flume was expensive to maintain, and finally about the year 1920 was washed out, so that the defendants, in order to avoid the expense of rebuilding the flume, cleaned out and improved the old Gamer ditch around the point of the hill from the point on the plat marked "Dam" down to about the point where it crossed the south line of the southeast quarter of section 7, intending to convey their Prickly Pear water through the same for that distance and then dump it back into the Gans and Klein ditch, when this action was commenced by the plaintiff for the purpose of restraining them from making use of that part of the Gamer ditch.

The defendants answered, setting forth numerous affirmative defenses wherein they claimed that the plaintiff's right to the use of the ditch in question had been lost by abandonment, nonuser and adverse possession.

The case was tried to the court sitting without a jury. After hearing the testimony the trial judge visited and made a personal inspection of the ditches in question and subsequently made findings in favor of the plaintiff and entered a decree restraining the defendants from taking possession of or using the Gamer ditch across the south half of section 7, township 12 north, range 5 west, in whole or in part, or at all. From this decree the defendants have appealed to this court.

Counsel for defendants has made numerous specifications of error, but all of them present only the following matters for consideration: (1) Had the plaintiff, before the commencement of this suit, abandoned his rights in the Gamer ditch? (2) Was the plaintiff's right of action barred under the provisions of sections 6432, 6433 and 6434, Revised Codes of 1907 (now sections 9015, 9016 and 9017, Rev. Codes 1921)? (3) Had the plaintiff, prior to the commencement of this suit, lost his rights in the Gamer ditch by nonuser? (4) What was the extent of plaintiff's right in the Gamer ditch?

1. The water flowing down the Gamer ditch was originally conveyed across Little Prickly Pear Creek by means of a flume. As early as 1906 this flume was washed out and has never been rebuilt. From that time down to the time of the trial of this action in June, 1922, no water had been conveyed through this ditch south of Little Prickly Pear Creek by the plaintiff or his predecessors in interest, nor had they cleared out the same or made any repairs thereto, and as a result of these years of disuse the ditch had· gotten into a dilapidated condition, had become filled with growths of underbrush and small trees, and could not be used for the purpose of conveying water without a great amount of cleaning out and repairs.

On the other hand, as appears from the foregoing, Fred Gamer owned the Canyon Creek water right and ditch down to June 6, 1906. In 1904 or 1905 his tenant used the water through the ditch for irrigation purposes on section 21. On June 6, 1906, Gamer and wife conveyed section 21, together with the water right and ditch, to the Masonic Home. On May 14, 1907, by an instrument in writing, the Masonic Home authorized the plaintiff to take possession of the ditch and water right and to use the same in consideration of his keeping the ditch in repair, which condition was to continue until such time as it should desire to use the same upon its ranch. So far as the record discloses, this condition continued down to the month of December, 1913, when the plaintiff became the owner of the water right and the ditch as far down as Silver Creek by purchase. During this interval the plaintiff used the water on his ranch north of Little Prickly Pear Creek, and after the purchase of the ditch and water right continued to use it in the same manner.

The plaintiff testified that he owned about 700 acres of land [1] lying north of Little Prickly Pear Creek, susceptible of irrigation through the Gamer ditch; that he had no land south of this creek and no present use for the ditch or water except on his own land, and never had had; that there was not enough water available under this right to irrigate the lands which he

already owned; that he intended at some time in the future to acquire reservoir sites higher up in the mountains and to impound water and convey the same to his ranch, and if there should be more thus acquired than was necessary for his use, to run it down through the Gamer ditch and sell it to others who might want to purchase it below the point in controversy in this action. The court found that plaintiff had selected two sites for such reservoirs, and that he eventually intended to use the ditch for the above-mentioned purposes; and plaintiff testified that he had had this plan in contemplation since prior to the time when he purchased the ditch and water right. The court further found that in 1914 Mike Geier, a tenant of Mrs. Holding in possession of her lands in the southwest quarter of section 7, plowed up and obliterated a part of the ditch through said land, but that the same was done by permission of plaintiff under agreement with him that the ditch would be restored upon his demand. These last-mentioned facts evince a clear intent on the part of the plaintiff and his predecessors in interest not to abandon either the ditch or water right.

To constitute abandonment, an intent to abandon must exist. (*Norman* v. *Corbley,* 32 Mont. 195, 79 Pac. 1059; *Thomas* v. *Ball,* 66 Mont. 161, 213 Pac. 597; *Moore* v. *Sherman,* 52 Mont. 542, 159 Pac. 966.) The court found that, as a matter of law, plaintiff had not at any time abandoned his right to the possession and use of either the ditch or water right, and this finding is justified upon the record as presented here.

2. Defendants also take the position that, since neither the [2] plaintiff nor his predecessors in interest had used the portion of the ditch in question during a period of more than ten years next before the commencement of this action, the plaintiff's right to the use of the ditch had been extinguished under the provisions of subdivision 4, of section 6759, Revised Codes of 1921, which reads as follows: "A servitude is extinguished * * * (4) when the servitude was acquired by enjoyment, by disuse thereof by the owner of the servitude for the period prescribed for acquiring title by enjoyment."

This position is not tenable. In the course of the trial it was claimed, and admitted by both plaintiff and defendants, that this ditch was originally constructed over the public domain. The right of appropriators of water to use the public lands for conveyance of the same is expressly recognized and acknowledged by the Congress of the United States (sec. 2339, U. S. Comp. Stats.; 9 Fed. Stats. Ann., p. 1340), and section 2340 (*Id.*, p. 1360) provides as follows: "All patents granted, or pre-emption of homestead allowed, shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by the preceding section." In *Cottonwood Ditch Co.* v. *Thom,* 39 Mont. 115, 101 Pac. 825, speaking of the nature of the rights acquired by appropriators under these sections, Mr. Justice Smith said: "Such acknowledgment, from so supreme authority, amounts to a grant of the right of way to those who, in good faith, prosecute the work of construction, over unoccupied public lands, with reasonable diligence to completion, for the purpose of applying the completed ditch or canal to a beneficial use." So that the plaintiff did not acquire his right to maintain this ditch across the land in question by enjoyment, but rather by grant from the United States and therefore the above-quoted section of the Code is not applicable here.

3. Defendants further contend that the plaintiff's right of [3] action was barred by the provisions of section 9015, Revised Codes of 1921, because neither plaintiff nor his predecessors in interest had been seised or possessed of the ditch in question within a period of ten years next before the commencement of the suit. As above pointed out, the plaintiff's title to the right of way for the ditch was acquired by grant from the government. This gave him the legal title to the same, and such an easement is classed as real property under sections 6667 and 6671, Revised Codes of 1921, and the same may be granted or held though not attached to land. (Sec. 6750, Rev. Codes 1921.)

By the provisions of section 9018, Revised Codes of 1921, "in every action for the recovery of real property, or the possession thereof, the person establishing a legal title to the property is presumed to have been possessed thereof within the time required by law, and the occupation of the property by any other person is deemed to have been under and in subordination to the legal title, unless it appear that the property has been held and possessed adversely to such legal title for ten years before the commencement of the action"; so that the plaintiff, having established the legal title to the ditch and right of way in question, is presumed to have been possessed thereof within the time required by law unless the same had been possessed adversely to him for a period of ten years before the commencement of this suit on April 19, 1920.

There is no claim in the testimony that the defendant Best or Mrs. Holding ever made any use whatever of the ditch, or the right of way for the same, over the lands in question adverse to or in defiance of the rights of the plaintiff until Best and his codefendants commenced to clean out and repair the ditch just a few days before this suit was brought. Best did not even fence that part of his land occupied by the ditch until five or six years prior thereto, and the Holding land where the ditch crosses never has been fenced. "In order to extinguish an easement by grant, there must be some conduct [4] on the part of the owner of the servient estate adverse to, and in defiance of, the easement, and the nonuse must be the result of it, and must continue for the statutory period of limitation; or, to produce this effect, the nonuse must originate in, or be accompanied by, some unequivocal acts of the owner inconsistent with the continued existence of the easement, and showing an intention on his part to abandon it; and the owner of the servient estate must have relied or acted upon such manifest intention to abandon the right so that it would work harm to him if the easement should be thereafter obstructed [asserted?]. Nothing short of an adverse and hostile use of the servient estate, inconsistent with the rights of the owner of

the easement, will start the statute of limitations running to defeat his right.'' (Jones on Easements, sec. 865.)

The determination of the court that plaintiff's right to maintain the suit was not barred by the statute should not be disturbed.

4. The question presented under the fourth proposition is [5] easily answered. Plaintiff alleged in his complaint that he was the exclusive owner of the Canyon Creek water right, the ditch and the right of way therefor and entitled to the exclusive use and enjoyment thereof, and in his testimony at the trial did not recognize that any other person had any interest whatever therein. However, according to the conveyances above referred to, the plaintiff only acquired such interest in the ditch from Canyon Creek to Silver Creek as had been conveyed by Fred Gamer and wife to the Grand Lodge Charity Fund, *viz.*, an undivided one-fourth interest, and that is the limit of his right therein.

As above shown, the defendant Best owns all that part of the southeast quarter of section 7 occupied by the portion of the ditch in question, and Mrs. Holding owns the southwest quarter of the section which embraces the land occupied by the remaining portion of the ditch, and both Best and Holding testified that they were in possession of their several tracts and had never recognized that any other person had any interest therein. The record does not disclose that any person other than the plaintiff asserts any interest in the ditch across this land, and since ''the owner of land in fee has the right to the surface and to everything permanently situated beneath or above it'' (sec. 6770, Rev. Codes 1921), and ''the possessor of real estate is presumed to be the owner thereof until the contrary appears,'' (*Gropper* v. *King*, 4 Mont. 367, 1 Pac. 755; sec. 10606, Rev. Codes 1921), *prima facie*, Best and Holding are the owners and possessors of this land and of the incidents pertaining thereto, including the ditch and right of way, subject only to the plaintiff's asserted one-fourth interest in the ditch and right of way. As to this ditch and right of

way, *prima facie,* the plaintiff and defendant Best are each the owners of an undivided interest therein across the southeast quarter of section 7, and this makes them tenants in common. (Sec. 6682, Rev. Codes 1921; *United States* v. *Northern Pac. R. R. Co.,* 6 Mont. 351, 12 Pac. 769.) The same condition prevails as to the plaintiff and Mrs. Holding in connection with the southwest quarter of section 7, but the record does not disclose that defendants had acquired any right to the use of her interest in the ditch across her land.

Tenants in common are equally entitled to the use, benefit and possession of the common property and may exercise acts of ownership in regard thereto, the limitation being that they are bound to so exercise their rights in the property as not to interfere with the rights of their cotenants. (38 Cyc. 17.) "Ownership of an easement over another's land is not neces-[6] sarily inconsistent with a like use by the land owner of the servient tenement so long as such use is subordinate to the easement and does not restrict or limit its exercise." (Wiel on Water Rights, 3d ed., 487, sec. 459; *Hoyt* v. *Hart,* 149 Cal. 722, 87 Pac. 569.)

From what has been said above, it is apparent that the defendant Best was entitled to use the Gamer ditch so far as the same was located upon his land and to consent to the use thereof by his codefendants, provided such use did not interfere with the right of the plaintiff to use his undivided one-fourth interest therein; and for this reason the decree of the court is so modified as not to restrain the defendants from taking possession and using that portion of the ditch running through the southeast quarter of section 7, township 12 north, range 5 west, and as so modified the decree will stand affirmed. Each party will pay his own costs on this appeal.

*Modified and affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.

Rehearing denied September 11, 1923.