LUCILE VENNES, PLAINTIFF AND RESPONDENT, *v.* FLOYD G.
NOLLMEYER AND LEAH RAY NOLLMEYER, HUSBAND
AND WIFE, DEFENDANTS AND APPELLANTS.

No. 10609.
Submitted December 17, 1964. Decided July 16, 1964.
394 P.2d 178.

J. H. Morrow, Jr. (argued), Donald A. Nash, Bozeman, for
appellants.

Robert M. Holter (argued), Robert E. Heath, Bozeman, for
respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal by the defendants from a judgment in favor of the plaintiff and the order denying a motion for new trial in the district court of Gallatin County, which cause was tried before the court without a jury.

There is in all water right cases an inherent complicated fact situation. An effort will be made to state all the basic facts for the purpose of arriving at our decision.

Plaintiff on April 30, 1962, filed a complaint claiming two irrigation ditch easements across defendants' land, in Section 7, Township 2 North, Range 7 East, County of Gallatin, Montana. The complaint further recites the allegation of adverse possession for more than ten years. The purpose of the action was to quiet title to the two ditches.

Defendants answered setting forth five defenses as follows:

1. That the complaint failed to state a claim;

2. That the defendants owned all of Section 7, Township 2 North, Range 7 East, M.P.M. for more than ten years;

3. That the two irrigation ditches had been abandoned and when plaintiff asserted a right it was promptly denied;

4. Alleged an adverse possession of defendants' lands including ditches for a period of more than five years; and

5. Alleged that the use of the waters of the involved creeks and ditches was covered by a decree of the Park County District Court.

The cause was tried before the Honorable W. W. Lessley on August 22, 1962. On October 16, 1962, the court made findings of fact and conclusions of law in favor of plaintiff and concluded plaintiff was entitled to have the easement rights quieted. Judgment was thereafter entered for the plaintiff and against the defendants. On October 26, 1962, defendants moved for a new trial supported by affidavit of an additional witness, but on November 13, 1962, the court denied the motion for a new trial and this appeal ensued.

Defendants were and are the owners of Section 7; plaintiff owns the North Half of Section 8. The two irrigation ditches

claimed by plaintiff for the use of irrigation had two different sources, the first one known as Ferry Lake Creek or Fairy Creek and the other known as Middle Fork of Flathead Creek or Corral Creek; both creeks in question are tributaries of the Shields River located in Park County, Montana.

While the original statement of claim in this cause was for the purpose of quieting title to the aforesaid claimed easements under actual, open, notorious, hostile, continuous possession of the ditches in question, yet at the conclusion of plaintiff's case she suddenly introduced, over objection, into evidence a patent of the United States Government to the Northern Pacific Railroad dated September 13, 1896, and filed for record on June 1, 1897.

The patent provided the exception or reservation: "* * * and whenever on the line thereof, the United States have full title not reserved, sold, granted or otherwise appropriated * * *."

The plaintiff then moved the court to have the complaint amended to conform to the proof. The court in finding of fact No 2 stated:

"That the original patent to lands now owned by defendant was granted by the United States of America to the Northern Pacific Railroad Company upon September 13, 1896; that the patent was filed for record on June 1, 1897, in the records of Gallatin County, Montana."

The court further found in finding of Fact No. 7, "That the described ditches were constructed by the original settlers to conduct irrigation water to the North Half of Section 8, Township 2 North, Range 7 East, M.P.M., in the years 1884 through 1886."

The court made these two findings on the basis of the patent and under the provisions of section 2339, United States Compiled Statutes, Title 43, U.S.C.A., Public Lands, § 661.

The only testimony on the subject of when and by whom the ditches may have been constructed was as follows by the witness Whitman:

46

"Q. In 1916, was there any sign of it (one of the ditches) having been maintained for a number of years? A. No, it wasn't. * * *

"Q. Would you estimate how many years it had been since it was maintained? A. Well, I would estimate five or six years.

"Q. And could it have been more than that? A. Yes.

"Q. Could it have been in the 1890's since it had been maintained? A. It could have been, yes.

"Q. Could it have been in the 1880's since it had been maintained? A. Well, I can't answer that because I don't know what—

"Q. Do you know when that ditch was constructed, Mr. Whitman? A. No, I don't.

"Q. You are familiar with the water rights in that general area, are you not? A. Yes, I am.

"Q. And you are familiar with the proposition that some of the water rights of Middle Fork of Fairy Creek were appropriated in 1886—excuse me, 1884, '86, and '88, are you not? A. Yes.

"Q. And these ditches were generally erected and put in at that time, were they not? A. Must have been.

"Q. And do you believe these to be the same original ditches? A. Yes.

"Q. And those ditches were the ones that the earlier settlers in this particular area set up as their irrigation? A. Yes.

"Q. Now, would that pertain as much to the ditch that cuts across the southeast corner of Section 7 as it would the ditch that diverts water near the quarter corner of Section 7? A. Yes, it would."

And again the same witness stated:

"Q. When was that land first settled up in there, Mr. Whitman? A. Oh, I imagine back in '82, '83, '84, '85.

"Q. It was at that time the settlers dug the ditches and fixed their water? A. I imagine so."

This is the only allusion to the date of the ditches; no proof as to who the owner might have been, no proof of appropriation or use was offered.

The witness, Joseph T. Whitman, by the foregoing quoted inference in his testimony, taken at best, tended to establish the existence of these ditches some time after the year 1880. He further testified as to his own knowledge of the ditches between the years 1916 and 1946 and further stated that the ditches had been on the land possibly 25 years prior to 1916.

The witness Whitman further testified:

"Q. They are the original ditches. Did you ever maintain this ditch from 1916 'til 1946? A. No, I didn't.

"Q. And did you ever use water out of the Middle Fork of Fairy Creek by this diversion, by this diversion in here, the quarter corner? A. No, I did not.

"Q. Did you ever repair the ditch that cuts through the southeast corner of Nollmeyer's land? A. No, I did not.

"Q. Did you ever use water through that ditch for the north half of Section 8? * * *

"Q. No, no one ever used, while you were here, no one ever used this diversion or this water that was taken out here near the quarter corner? A. No.

"Q. That was taken into the other land, was it? A. No.

"Q. Did you ever claim to own that ditch during the time that you were on that land? A. No, I didn't claim to own it, because I didn't own that place. * * *

"Q. I believe you stated, Mr. Whitman, that that particular old vestige of a ditch out of Middle Fork of Flathead Creek was not used at any time by you during your operation of the lands in Section 8 from 1916 through 1946? A. No.

"Q. Is that true? A. Yes.

"Q. And I believe you discussed something about a sliding in of that ditch? A. Yes. * * *

"Q. And that would have been over on the lands in Section 8 where the slide-in took place? A. Yes.

48

"Q. And the lands in Section 7 back to Corral Creek were all grown up with brush and weeds? A. Yes.

"Q. No headgate had ever been maintained as far as you know? A. As far as I know, because I was never up to where it came out of the creek."

The defendants cite seven specifications of error going to evidentiary rulings and to findings and conclusions as well as the denial of a motion for new trial.

We think, however, that but one question need be answered. That one is whether the plaintiff proved any case of adverse possession of the ditch easements involved.

Plaintiff's complaint was based on the theory of adverse possession to prove and establish the claimed easements, asserting without equivocation a prescriptive or user right.

After plaintiff and her husband had testified to the adverse possession theory of the complaint, for ownership of these easements, and the witness Whitman had testified, plaintiff's exhibit 2 was offered in evidence as follows:

"MR. HOLTER: At this time, the Plaintiff would offer without foundation, Book 24, Page 216, Records of Gallatin County.

"THE COURT: Book 24 of Deeds, page 216.

"MR. HOLTER: As representing the original patent upon Section 7, Township 2 North, Range 7 East.

"THE COURT: Will you show it to Mr. Morrow?

"MR. HOLTER: Excuse me, Your Honor, it starts at Page 214.

"THE COURT: Page 214 and continuing until 216, I assume?

"MR. HOLTER: Actually, it continues to page 216.

"THE COURT: 216, all right. This will be Plaintiff's 2, will it not?

"MR. HOLTER: I have Mr. Walton in Court.

"MR. MORROW: I don't object to the foundation, your Honor, but object upon the grounds it is irrelevant, incompetent, and immaterial to the issues of this case.

"THE COURT: All right, what is the purpose?

"MR. HOLTER: Your Honor, I am not currently cognizant of the present number of the United States Compiled Statute, but I believe under the Federal Act at this time that the grantee took this land, Section 7, subject—the deed will be dated in 1896—subject to irrigation ditches existing upon it at the time. Under the case of Rodda v. Best, 68 Mont. 205, 217 P. 669, we find that if this position is true that the right-of-way is not subject to extinguishment by this use, being a grant vested right by the United States.

"THE COURT: All right, any other objection to the introduction of this?

"MR. MORROW: Yes, upon the grounds it is irrelevant, incompetent, and immaterial.

"THE COURT: Overruled. It is most competent. (Plaintiff's Exhibit No. 2 admitted in evidence.)

"MR. HOLTER: Plaintiff rests, your Honor.

"THE COURT: All right, we are in recess until 2:00 o'clock. You mark a copy, and the copy will be marked by the Court Reporter as 2 and will be admitted over the objection of the Defendants in this case.

"MR. MORROW: May we have a copy?

"THE COURT: Oh, yes, surely. Make two copies. We are in recess now, gentlemen, until 2:00 o'clock. (Noon recess. Court reconvened at 2:00 o'clock p.m.)

"THE COURT: Let the record show in this cause that the plaintiff has now rested.

"MR. HOLTER: Your Honor, may I say two things? At the noon hour, I prepared and had marked Plaintiff's Exhibit No. 2, which has been certified by the Clerk and Recorder as an exact copy of Vol. 20, page 284—correction Book 24 of Deeds, page 214.

"Your Honor, at this time, if it please the Court, I would move that the Complaint be amended in conformity with the proof.

"MR. MORROW: To which, we object, your Honor. We

objected to the introduction of this testimony. The case is framed, we are here in Court, as one based on adverse possession. There is another theory which he apparently attempted to present, not clear, but we do object to amending the complaint.

"THE COURT: Isn't this part of your theory, adverse possession?

"MR. HOLTER: Yes.

"THE COURT: Overruled. It will be amended accordingly. You may proceed. Defendant's case, please.

"MR. MORROW: At this time, the Defendants move to dismiss the claim upon the ground that the evidence submitted by the plaintiff fails to establish the allegations of Plaintiff's complaint, and, in fact, negatives the claim of adverse possession of the involved purported easement, and secondly, there have been no facts submitted to the Court upon which any basis of any claim for any easement could be determined by this Court for any uses either by way of direction, size or location.

"THE COURT: Let the record show that the motion to dismiss, I assume, has been made pursuant to Rule 41 of Montana Civil Procedure, and the Court now declines to render any judgment or rule on any motion until all of the evidence is in, and you may proceed. That means that your motion is still in the record and can be considered.

"MR. MORROW: Yes, sir.

"THE COURT: And you do not waive anything by proceeding with the evidence, under Rule 41."

The trial judge and defense counsel at this moment were confronted with a new and different lawsuit, this evidence coming as it did at the end of the plaintiff's case. Not only were they denied, as a practical matter, the right of cross examination, but it also stood as a complete variance from the major premise of the complaint and upon which their defense was predicated.

The trial court found adverse possession for the plaintiff, this

finding apparently predicated on color of title (the patent) or was it by grant?

To observe this complete change of legal theory is to recite a pertinent understatement of trial.

Trial was had on August 22, 1962, and submitted to the court for decision. The court's findings were dated October 16, 1962, and judgment entered on October 18, 1962.

From the foregoing quoted exchange, the theory of adverse possession is apparent. But, we have searched the record from end to end and find no satisfactory proof, as such, as to when the ditches were built. No evidence of diversion, use of the ditches by predecessors of plaintiff, or plaintiff herself for that matter. For that matter we do not even know who the predecessors might have been. The only evidence actually in the record is that of the witness Whitman, previously quoted in part, who testified to non-user since the year 1916.

The record in this case is wholly unsatisfactory. But, in any event, it needs no citation of authority to hold that the motion of defendants to dismiss the claim of plaintiff at the close of plaintiff's case should have been granted.

Therefore, the judgment is reversed with directions to dismiss the complaint.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES and JOHN C. HARRISON concur.

MR. JUSTICE ADAIR dissenting:

I find myself unable to concur in the majority opinion determining this appeal. In my opinion the evidence introduced in the trial court is ample to sustain the judgment there entered, hence, I dissent to the reversal of such judgment and to the dismissal of the plaintiff's complaint and action.