MR. JUSTICE HARRISON
delivered the Opinion of the Court.
This is an appeal from a judgment of the District Court, Seventh Judicial District, McCone County, quieting title to a parcel of land owned by E. E. Eggebrecht, Inc. (“Eggebrecht”), plaintiff and respondent, and defeating a right of way for a reservoir site on that land held by Otis S. and Ardis Waters and Waters, Inc. (“Waters”), defendants and appellants. The land in question is situated in NEA, SV6, Section 12, T. 24 N., Rge. 49 E., M.P.M., McCone County, Montana.
Eggebrecht bought this land in 1973 under a contract for deed. Waters own an adjacent parcel of land. In 1976, Waters rebuilt a dam on Wolf Creek, a small stream that bisects the two properties. The dam is located about two-thirds of a mile to the east of the boundary with Eggebrecht’s land. The water backed by this dam is known as the Wolf Creek reservoir. On several occasions since 1978 the water in the reservoir has covered a portion of Eggebrecht’s farmland. Since the amount of water in the reservoir depends on *293 both the extent of spring runoff and the amount of irrigation required on Waters’ land, the number of Eggebrecht’s acres flooded, as well as the length of time the water has stood on those acres, has varied from one year to the next. From 1978, the first year that water was backed onto Eggebrecht’s land, to 1983, the year this lawsuit was filed, the maximum amount of Eggebrecht’s farmland affected in any one year was twenty-five acres. Moreover, in no year was this land rendered completely unproductive. Eggebrecht was able to seed the affected acreage after the water receded, gathering, to be sure, considerably lower yields. In addition to causing decreased productivity on some of Eggebrecht’s farmland, the water has at various times caused Eggebrecht great inconvenience in moving machinery to a particular field; he has at those times been forced to make either an eight mile detour or pass through a neighbor’s cultivated field.
The reservoir right of way that is the focus of this lawsuit was acquired by Waters’ predecessor in interest pursuant to sections 18-21 of a March 3, 1891, Act of Congress entitled, “An act to repeal timber culture laws and for other purposes.” 43. U.S.C., Sections 946-949 (1982). Under this Act, canal companies and irrigation districts, formed for the purpose of irrigation and drainage, and having filed the necessary materials for the approval of the Secretary of the Interior, were granted a right of way on the public lands for the ground occupied by any ditch, canal, or reservoir they constructed. A map of the land so occupied was to be filed in the local land office and thereafter all lands burdened by such a right of way were to pass subject to the right of way. In this case the validity of the right of way acquired by Waters’ predecessor in interest is not questioned by Eggebrecht and is not at issue. A copy of a map of the reservoir filed as an application under the Act, along with a copy of a letter from the Interior Department indicating that the reservoir had been constructed and the “easement” earned, was accepted by the District Court as evidence that the right of way had properly vested. We find no reason to hold otherwise.
Upon initial review this case appeared straightforward. Waters and Eggebrecht agreed that the right of way for the reservoir site should properly be designated an easement by grant from the United States to Waters’ predecessor in interest. They further agreed that the reservoir site had been used as a reservoir from 1910 (the year the first dam was built) to 1938 (the year the last dam washed out), but that from 1938 to 1976 there was no dam and thus, obviously, no reser *294 voir. At oral argument it was conceded that the issue presented was whether an easement by grant can be abandoned by non-user.
We have discovered, however, in the course of our review of this case that there is a great deal of confusion over the nature of the reservoir right of way that was granted to Waters’ predecessor in interest under the March 3, 1891, Act in question. In Kern River Co. v. United States (1921), 257 U.S. 147, 152, 42 S.Ct. 60, 62, 66 L.Ed. 175, 178, the Court stated, “The right of way intended by the Act was neither a mere easement nor a fee simple absolute, but a limited fee on an implied condition of reverter in the event the grantee ceased to use or retain the land for the purpose indicated in the act.” Unfortunately, this obscured both the nature of the present interest held by the grantee and the future interest held by the grantor.
With respect to the future interest, the use of the term “reverter” is clearly in error. Several cases have held that divestiture under the Act does not occur automatically upon failure to use or retain the land for the purpose stated in the Act, but must be determined by a legal proceeding. Hurst et al. v. Idaho-Iowa Lateral and Reservoir Co. (1926), 42 Idaho 436, 246 P. 23; Hurst et al. v. Lateral and Reservoir Co. (1921), 34 Idaho 342, 202 P. 1068; Carns v. Idaho-Iowa Lateral and Reservoir Co. (1921), 34 Idaho 330, 202 P. 1071; United States v. Whitney (9th Cir. 1910), 176 F. 593. The Idaho Court in Hurst (1921) compounded the terminological error in Kern River by characterizing the future interest retained by the United States as a possibility of reverter. However, a basic element of a possibility of reverter is that possession reverts automatically upon the occurrence of an event named in the granting instrument (in this case the Act of Congress). American Law of Property, Vol. I, § 4.12; Boyer, Survey of the Law of Property, 3d.ed., p. 105. Since it has been held, even in the Hurst case, that there is no automatic reversion under the Act in question, it is clear that the United States did not retain a possibility of reverter. Rather, the United States granted to Waters’ predecessor in interest a right of way in the reservoir site subject to the condition that it be used for the purpose indicated in the Act. Should it not be used for that purpose, then the United States can choose to exercise a right of re-entry or a power of termination, thereby causing a forfeiture of the right of way.
We now turn to the nature of the present interest in the reservoir site held by Waters. When the United States Supreme Court *295 in Kern River, supra, designated the present interest under the Act in question a “limited fee” it was relying on an earlier decision in Rio Grande Western Ry. Co. v. Stringham (1915), 239 U.S. 44, 36 S.Ct. 5, 60 L.Ed. 136. In Stringham the Court characterized a railroad right of way obtained under a 1875 Act of Congress as a “limited fee.” 239 U.S. at 47, 36 S.Ct. at 6, 60 L.Ed. at 138. The rationale for this characterization was later severely criticized by the Court in Great Northern Ry. Co. v. United States (1942), 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836. In that case the Court found that the railroad rights of way obtained under the 1875 Act should properly have been designated easements. It follows therefore that the designation in Kern River, that the reservoir right of way under the 1891 Act is a limited fee, rests on a shakey legal foundation. An analysis of the limited fee/easement distinction as it pertains to a reservoir right of way under the 1891 Act is contained in United States v. Big Horn Land and Cattle Co. (8th Cir. 1927), 17 F.2d 357. In that case it was emphasized that a fee interest may be had in an easement. “We think, it therefore, not important whether interest or estate passed be considered an easement or a limited fee. In any event it is a limited fee in the nature of an easement.” Big Horn Land and Cattle Co., 17 F.2d at 365. We agree. Kern River introduced unnecessary terminological confusion. Therefore, we hold that, despite Kern River, there is no useful distinction to be made between a limited fee and an easement when describing the nature of a reservoir right of way granted under the 1891 Act.
Since the reservoir right of way in question can safely be characterized as an easement, we turn to the question of whether the lower court erred when it determined that said right of way had been abandoned. The rule in Montana is that in order to constitute an abandonment an intent to abandon is necessary. Hilyard v. Engel (1949), 123 Mont. 20, 209 P.2d 895; Conway v. Fabian (1939), 108 Mont. 287, 89 P.2d 1022; Rodda v. Best (1923), 68 Mont. 205, 217 P. 669; Moore v. Sherman (1916), 52 Mont. 542, 159 P. 966. Certainly, Waters never communicated by word an intent to abandon the reservoir right of way. Further, and contrary to the claim of Eggebrecht, mere non-use of an easement by grant, no matter how long continued, does not constitute abandonment. City of Billings v. O.B. Lee Co. (1975), 168 Mont. 264, 542 P.2d 97. The mere fact that from 1938 to 1976 no dam was in place with which to back water onto the reservoir site does not constitute abandonment of the reservoir right of way. Whether 38 years of non-use constitutes grounds *296 for forfeiture under the Act is a question that can be raised only by the United States and not by the patentees and their successors. Wiltbank v. Lyman Water Company (1970), 13 Ariz.App. 485, 477 P.2d 771. The judgment of the District Court is reversed.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES SHEEHY and HUNT, and the HON. GORDON R. BENNETT, District Judge, sitting for MR. JUSTICE GULBRANDSON, concur.