SMITH ET AL., APPELLANTS, *v.* HOPE MINING COMPANY, RESPONDENT.

[Submitted June 29, 1896.   Decided July 13, 1896.]

WATER RIGHTS—*Adverse possession.*—Where the defendant and plaintiff's predecessors had, in 1881, adjusted a controversy in respect to the use of the waters of a stream by a contract defining their respective rights and manner of use, the fact that the plaintiff and his predecessor did not use any of the water from 1883 to 1893, during which period the defendants continued to use it all as permitted under the contract, does not justify a finding that defendants by such use acquired title thereto by adverse possession,—there being no evidence that the defendant ever assumed to act otherwise than under the contract, or had ever given notice that they claimed the use of the waters adversely to plaintiffs.

SAME—*Abandonment—Nonuser.*—Mere nonuser of a water right is not an abandonment. (*Atchinson* v. *Peterson*, 1 Mont. 561; *McCauley* v. *McKeig*, 8 Mont. 389; *Tucker* v. *Jones*, 8 Mont. 225; *Middle Creek Ditch Co.* v. *Henry*, 15 Mont. 558; *Gassert* v. *Noyes*, *ante*, page 216, cited.)

SAME—*Abandonment—Appurtenance.*—A water right necessary for the operation of a mill used for mining purposes is an appurtenance thereto, and an intention to abandon must be clearly shown. (*Tucker* v. *Jones*, 8 Mont. 225; *Sweetland* v. *Olsen*, 11 Mont. 29; *Beatty* v. *Murray Placer Mining Co.*, 15 Mont. 314, cited.)

SAME—*Abandonment—Evidence of intention.*—While the nonuser of a water right for a period longer than the statute of limitations would, if standing alone, be strong evidence of an intention to abandon it, yet where the water is used as an appurtenance to a mill which was closed down for the period in question and the evidence clearly shows that there was no intention to abandon the mill, the temporary and necessary nonuser of the water during the period in which the operation of the mill was suspended, is no evidence whatever of an intention to abandon the water right.

*Appeal from Third Judicial District, Granite County.*

ACTION to enjoin interference with water right.   Judgment

was rendered for the defendant below by BRANTLY, J. Reversed.

Statement of the case by the justice delivering the opinion.

This was an action brought to restrain the defendant from interfering with an alleged water right of the plaintiffs. The case was tried to the court without a jury. Findings were made upon which judgment was entered for the defendant. Plaintiffs' motion for a new trial was denied, and they appeal from that order and the judgment. It appears that, prior to November 28, 1881, the predecessor of these plaintiffs was the Algonquin Mining Company. This mining company owned a mill, as did also the Hope company, the defendant, near Frost creek, in what was then Deer Lodge county. The Algonquin Company were taking water for their mill out of Frost creek. Below the head of the Algonquin ditch the Hope Company had a ditch, and were conveying water to their mill from the same creek.

It appears that the Algonquin people were returning a portion of the water which they used in their mill to the creek, and thus caused the water flowing to the Hope ditch to become foul and partially unfit for use. By reason of this fact the Hope Company commenced an action against the Algonquin Company to restrain them from befouling the water. This action was settled out of court by an agreement made between the two companies. That agreement provided as follows : The Algonquin Company granted, bargained, and sold to the Hope Company 15 inches of the waters of said Frost creek, and the right to the said 15 inches at the head of the Algonquin ditch, and the Algonquin Company recognized the priority of the right of the Hope Company to the waters of the said creek at said point to the extent of 15 inches; and the Algonquin Company further obligated itself to deliver to the Hope Company these 15 inches of water at the Hope reservoir near its mill, until such time as the Hope Company wished to conduct it elsewhere. The Algonquin Company further agreed that the Hope Company should have, in addi-

tion to these 15 inches of water, all the further amount of water which they needed over and above what the Algonquin Company needed in their mill ; that is to say, the Hope Company were to have 15 inches first; then the Algonquin were to have all they needed; and afterwards the Hope were to have the remainder. The expenses of ditching and boxing these waters were divided between the two companies. The Hope people in consideration of these agreements waived all claims for damages set up in their action which they had commenced, and withdrew that action. The Hope Company also relinquished to the Algonquin Company any claim to the waters of Frost creek except the rights secured to it by the preceding terms of the contract. This contract was executed by the two companies on November 28, 1881. It appears furthermore that the Algonquin mill was operated and the water used by it up to 1883 or 1884. The court found that it was used only until 1883.

The court made the following findings of fact :

"First. The court finds that since the year 1883, and up to the time of the commencement of this action in January, 1893, the defendant has been in the actual, continued and adverse possession and use of all the waters of Frost creek in Granite county, Montana, flowing therein at the head of what is known as the Algonquin ditch, at which point the defendant diverted the water, at all seasons of the year, other than flush or flood seasons, and to the full capacity of the said Algonquin ditch.

"Second. That the amount of water usually flowing in the said Frost creek in ordinary seasons, when the same is not affected by floods or freshets, is twenty-eight (28) inches measured as provided by the statutes of Montana.

"Third. That since the year 1883, the defendant has used the waters of Frost creek, to the extent hereinbefore found, for a useful and beneficial purpose, and at the date of commencement of this action was so using the same.

"Fourth. That since the year 1883, and until a short time prior to the commencement of this action in January, 1893, the Algonquin company, and those claiming under it, have

not used any of the waters of the said Frost creek for any purpose whatever.

"Fifth. That the plaintiff abandoned whatever right it had to the use of the waters of the said Frost creek in the year 1883, and thereby lost all right which it had therein prior to the year 1883."

From these findings of fact the court declared the law to be that the defendant was the owner as against the plaintiffs, and entitled to the use of all the waters of Frost creek flowing at the head of the Algonquin ditch other than in flush or flood seasons, which amount was found to be twenty-eight inches; and as to any excess over twenty-eight inches, that the defendant is entitled to the same as against the plaintiffs to the full capacity of the ditch. Judgment was thereupon entered in favor of defendant for costs.

*H. R. Whitehill,* for Appellants.

Abandonment is a question of intention, and the intention can be arrived at either by express words to that effect, or by the acts or circumstances by which the intention is made manifest. Nonuser is not evidence of abandonment, but is only a fact, a circumstance to show intention to abandon. (*Atchison* v. *Peterson,* 1 Mont. 461; *McCauley* v. *McKeig,* 8 Mont. 389; *Tucker* v. *Jones,* 8 Mont. 225; *Middle Creek D. Co.* v. *Henry,* 15 Mont. 558; *Wimer* v. *Simons,* 39 Pac. Rep. 989; *Nichols* v. *McIntosh,* 34 Pac. Rep. 278.) It was error for the court below to find that the respondent had been in the adverse use and possession of all of the waters of Frost creek flowing in the Algonquin ditch to its full capacity since the year 1883. In the first place the respondent was not in the condition or situation to raise the question of adverse possession. It was using the waters as they flowed through the Algonquin ditch, under the agreement above referred to, and not otherwise. It was using the ditch by permission of the Algonquin company and its successors, the appellants. Under the authorities the respondent could not hold the ditch or the water running through the ditch by adverse possession without giving notice

to the Algonquin company or to its successors that it was claiming the ditch and the water adversely to the appellants or its predecessors in interest. (*Crandall* v. *Woods,* 8 Cal. 136; *Water Co.* v. *Crary,* 25 *id.* 504; *American Co.* v. *Bradford,* 27 *id.* 360; *Anaheim Water Co.* v. *Water Co.* 64 *id.* 185; *Thomas* v. *England,* 71 *id.* 458; *Alta Land Co.* v. *Hancock,* 85 *id.* 226; *Doyle* v. *Wade,* 11 Am. St. Rep. 342, note; *Huston* v. *Byber,* 17 Or. 140.) The Algonquin company and its successors had no notice from the respondent that its use was hostile to them, or that respondent continued to use the water other than under the agreement. (1 Am. & Eng. Ency. of Law, 296, Div. 48; 19 *id.* 12 Div. 2; 28 *id.* 1005, Div. 2.)

*Forbis & Forbis,* for Respondent.

Under the agreement between the Algonquin company and the respondent, the most that can be claimed by appellants is that it was a purchaser of the water from the Hope company. But that fact will not prevent the running of the statute. (*Ford* v. *Sawyer,* 57 Cal. 65; *Franklin* v. *Dorland,* 28 Cal. 175; *Dorland* v. *Magilton,* 47 Cal. 485; *Hartman* v. *Reed,* 50 Cal. 485.) But the Algonquin company was not even a purchaser. The agreement does no more than recognize certain rights in the Algonquin company. After the agreement the parties stood at arms length and from that time on neither party was precluded from acquiring title in any manner recognized by law. (*Davis* v. *Gale,* 32 Cal. 26; *Cox* v. *Clough,* 70 Cal. 347; *Union Water Co.* v. *Crary,* 25 Cal. 504; *Nichols* v. *McIntosh,* 34 Pac. 278; Am. & Eng. Ency. of Law, Vol. 28, pp. 1005 to 1017 and notes.)

DE WITT, J.—On appeal, the plaintiffs contend that the court erred in its findings of fact in two respects. First, that the evidence did not sustain the finding that the defendant had been in the actual, continued and adverse possession and use of all the waters of Frost creek as set forth in finding No. 1, from 1883 to 1893; second, that the evidence did not sustain the finding that the plaintiffs abandoned the right which they

had in the use of the waters of Frost creek in 1883. We will examine these two contentions.

(1) We are clearly of opinion that the evidence does not in any degree sustain the finding of adverse possession by the defendant. The rights of the respective parties, as far as this action is concerned, date from the compromise contract of November 28, 1881. At that time there was a controversy between the two mining companies as to the use of the waters of Frost creek. That controversy, and the lawsuit growing out of it, were settled by the contract described. It was thereby agreed that the Hope company instead of taking its water, as theretofore, at a point below the head of the Algonquin ditch, should take it through the Algonquin ditch and flumes. It was settled between the two mining companies that the Hope company had the prior right to the use of fifteen inches; and it was also conceded that they should have the use, as far as the Algonquin company was concerned, of a further amount of water which was over and above the water necessary for the Algonquin mill. Thereupon the companies used the water through the common vehicle—the Algonquin ditch. They divided the expenses of taking out and delivering the water through this ditch and the flumes and boxes connected therewith. When the Algonquin mill closed down in 1883, it appears by the evidence that the Hope company continued to take the water through this same common vehicle. They had a right to take fifteen inches, and they had a further right to take all over fifteen inches which the Algonquin company were not using. In fact the Algonquin company were using no water from 1883 to 1893; therefore, the Hope company, by reason of the contract, had, as against the Algonquin company, the right to all the waters of the creek which was conveyed into the ditch. These waters they took as they had a right to take them under the terms of the contract. We cannot understand how it was held that the Hope company were acting adversely to the Algonquin company when they were simply doing exactly what the Algonquin company had contracted that they might do. There is no evidence what-

ever that the Hope company ever purported to act otherwise than under the contract. They never notified the Algonquin people, either by word or deed, until the controversy arose in 1893, out of which this present lawsuit originated, that they claimed the use of these waters adversely to the Algonquin company. In our opinion, the evidence shows beyond any question that the Hope people were using the waters under the contract, and not adversely to the Algonquin. We are therefore of opinion that the finding of the adverse use and possession by the defendant is not sustained by the evidence.

2. We are also of opinion that the evidence does not sustain the finding that the plaintiffs had abandoned their right to the use of the waters which they owned, as against the defendant, in 1883. It is true that the evidence shows without controversy that the Algonquin Company did not use the waters, in their mill or otherwise, for a period of about nine years following 1883. But mere nonuser of a water right is not an abandonment. (*Atchison* v. *Peterson*, 1 Mont. 561; *McCauley* v. *McKeig*, 8 Mont. 389; *Tucker* v. *Jones*, 8 Mont. 225, *Middle Creek Ditch Co.* v. *Henry*, 15 Mont. 558; *Gassert* v. *Noyes*, ante, page 216.)

The nonuser of water for so long a period, and especially a period longer than the statute of limitations, is certainly very potent evidence, if it stood alone, of an intention to abandon. Abandonment is a question of intention. (See cases last cited.) But whatever force the fact of nonuser for nine years may have had in showing an intention to abandon, that force was wholly offset and contradicted by the other evidence in the case, so as to leave, in our opinion, not even a conflict of testimony. It appears that, when the Algonquin mill was shut down in 1883, a man was employed to drain all the pipes and oil the machinery, for the reason that the company could not use the water when the mill was shut down. The water was a necessary appurtenance to the mill,—necessary, as appears by the testimony, as a matter of fact, and an appurtenance as a matter of law in this jurisdiction. (*Tucker* v. *Jones*, 8 Mont. 225 ; *Sweetland* v. *Olsen*, 11 Mont. 29 ; *Beatty* v. *Murray Placer Mining Co.*, 15 Mont. 314.)

During the period while the mill was shut down—that is for nine years—it was cared for by the owners. It was left in charge of persons resident in the territory and the state of Montana. Some one always had charge of the property, and it appears by the evidence that for a very large portion, if not all, of the time a custodian or watchman was upon the premises, caring for them. It cannot be contended for a moment that there was a scintilla of evidence tending to prove that the Algonquin Company intended to abandon the mill. Every act shows that they did not so intend. They did not use the water, simply because the machinery of the mill was not in motion. When it thus appears that the intention was clearly not to abandon the principal estate (that is, the mill), we cannot hold that the fact of temporary and necessary nonuser of the appurtenance (that is, the water) was any evidence whatever of an intent to abandon that appurtenance. The appurtenance was a necessity to the mill, and the intention to abandon that appurtenance must clearly appear. (See cases last cited.) We think the contrary clearly appears in this case. If we sustain the finding of the district court as to the abandonment, it would be holding, in practical affairs, to this effect, viz., that if, through the vicissitudes of mining, a company finds itself obliged to close its mill for a considerable period,—a period as long as the statute of limitations,—then, in order to preserve the water right appurtenant to the mill, they will not be permitted to allow the water to remain idle, but must continue its use. To continue its use they must keep the machinery of the mill moving. These views lead into absurdities. They simply demonstrate that, if a milling or mining company is obliged to close its mill, and thus cease the use of its water right for a period equal to the statute of limitations, it will by such an act be deemed to have abandoned the water right, which is an absolutely necessary appurtenance to the mill. We cannot subscribe to any such doctrine as this. As above noted, whatever force as evidence the fact of the nonuser of the water had was wholly destroyed by the conclusive evidence that the Algonquin Company did not abandon its mill. In the

face of the evidence of intention to retain the mill, the mere fact that it did not use the water when it could not use it is of no weight whatever. It does not even raise a conflict in testimony.

These two findings which we have reviewed being set aside, as not sustained by the evidence, there is nothing left to sustain the judgment. It is therefore reversed, and the case remanded, with directions to grant a new trial.

*Reversed.*

HUNT, J., concurs. PEMBERTON, C. J., not sitting.

