THOMAS ET AL., RESPONDENTS, *v.* BALL ET AL., RE-
SPONDENTS; PRICE, APPELLANT.

(No. 5,009.)

(Submitted January 24, 1923.   Decided February 14, 1923.)

[213 Pac. 597.]

*Water Rights — Abandonment—Nonuser — Evidence — Insufficiency—Implied Findings.*

Water Rights—Appeal—Findings—Insufficiency of Evidence—Burden on Appellant.
   1.   On appeal in an equity case (a water right suit) the appellant has the burden of showing that the evidence preponderates against findings attacked, and where it furnishes reasonable grounds for different conclusions, they will not be disturbed.
Same—Change in Place of Diversion and Use—Effect on Appropriation.
   2.   Neither a change in the place of diversion of water nor a change in its use from mining to agriculture, or *vice versa*, affects its appropriation.
Same—Want of Title to Land in Claimant Does not Impair Appropriation.
   3.   The fact that neither the claimant of a water right nor his predecessors in interest had legal title to the land upon which the water was used does not impair the appropriation.
Same—Abandonment—Implied Findings.
   4.   Where, in a water right suit, the issue of abandonment was raised and a finding thereon was necessary to a determination of the case, and the trial court, though failing to make a finding on that issue, rendered judgment in favor of the party alleging abandonment, a finding that the appropriation had been abandoned will be implied.
Same—Abandonment—Who may not Question Validity of Appropriation.
   5.   Where a water right was appropriated in 1883 and used for mining purposes until 1889 when the appropriator left the state and thereafter conveyed the right to others who used it for irrigating lands in 1892 and 1893, no use having been made of the water for

66 Mont.—11

the years 1889 to 1892, the question of abandonment because of such nonuser could not be raised by a party whose right in the stream was not initiated until 1896, since until the initiation of another right no one was in position to question the validity of the first appropriation.

Same—Abandonment—Essentials.

6. Abandonment of a water right is a voluntary act, and to constitute it there must be a concurrence of act and intent—the relinquishment of possession and the intent not to resume it for a beneficial use—neither alone being sufficient to bring about its abandonment.

Same—Abandonment—Nonuser not Conclusive.

7. While nonuser of a water right for a considerable period of time may be some evidence of an intention to abandon the right, it alone, even for a period exceeding the statute of limitations, is not conclusive.

Same—Abandonment—Burden of Proof.

8. One who claims an abandonment of a water right has the burden of proving it by a preponderance of evidence, which evidence must be clear and definite.

Same—Abandonment—Evidence—Insufficiency.

9. Where the only evidence that a water right had been abandoned was the fact of nonuser for seven years, whereupon its use was resumed by the owner and the right later sold to another, a decree that it had been abandoned was unwarranted, such resumption and sale being some evidence that abandonment was not intended by its nonuser.

*Appeals from District Court, Powell County; Geo. B. Winston, Judge.*

ACTION by Arthur Thomas and another against James B. Ball, David J. Price, and another to determine water rights. From the judgment and a denial of a new trial, defendant last named appeals. Modified and affirmed.

*Messrs. Scharnikow & Blaisdell,* for Appellant, submitted a brief; *Mr. Edward Scharnikow* argued the cause orally.

Citing on the question of abandonment: *Lowry* v. *Carrier,* 55 Mont. 392, 177 Pac. 756; *Moore* v. *Sherman,* 52 Mont. 542, 159 Pac. 966; *Middlecreek Ditch Co.* v. *Henry,* 15 Mont. 558, 39 Pac. 1054; *Smith* v. *Hope Min. Co.,* 18 Mont. 432, 45 Pac. 632; *Norman* v. *Corbley,* 32 Mont. 195, 79 Pac. 1059; *Featherman* v. *Hennessy,* 42 Mont. 535, 113 Pac. 751.

---

6. Abandonment or loss of rights of prior appropriators of water, see note in 30 L. R. A. 265.

[66 Mont. 161.]

*Mr. S. P. Wilson,* for Respondents, submitted a brief, and argued the cause orally.

Citing: *Davis* v. *Gale,* 32 Cal. 26, 91 Am. Dec. 554, at 558; *Jackson* v. *Indian Creek R. D. I. Co.,* 18 Idaho, 513, 110 Pac. 251; Wiel on Water Rights (3d ed.), sec. 569; *Kinman* v. *Hunneville,* 93 Cal. 519, 29 Pac. 124.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was instituted to have determined the relative rights of the parties to the use of the waters of McKay Creek in Powell county. The trial court awarded to plaintiff Thomas 105 inches, to plaintiff McKenzie 100 inches, to defendant Ball 100 inches, and to defendant McDonald 35 inches, all prior in time to the right to 100 inches awarded to defendant Price as of date June 1, 1905. Other awards were made, but they were all subsequent to 1905, and are not material here. From the judgment and from an order denying his motion for a new trial defendant Price appealed, and contends that upon the record presented he is entitled to an appropriation made by his predecessor, William Russell, in 1888, and to an additional appropriation made by his predecessor, John McKay, in 1883. These two contentions will be considered in their order.

1. There is not any controversy over the fact that William Russell made an appropriation of the waters of Rhine Creek in 1888, and that defendant Price succeeded to that right. It is not controverted either that, if McKay Creek is a tributary to Rhine Creek, the Russell appropriation is prior in time and superior in right to any appropriation recognized by the court in its decree; in other words, so far as the Russell right is involved, the determining question is this: Is McKay Creek a continuation of or a tributary to Rhine Creek? Singularly enough the evidence touching this matter is in hopeless conflict—a conflict induced and explained by a freak of nature the counterpart of which probably cannot be found

elsewhere in the state. That portion of Rhine Creek over which there is not any dispute lies north of a divide, and carries water in a northwesterly direction into Nevada Creek, a tributary of the Big Blackfoot River. That portion of Six Mile Creek not in dispute is on the south side of the same divide, and carries water in a southwesterly direction into the Little Blackfoot River. The head of the undisputed portion of Rhine Creek is not more than six hundred yards from the head of the undisputed portion of Six Mile Creek, and between these two points the divide is a flat tableland. Farther to the east McKay Creek rises in the mountains on the south side of the divide, and flows westwardly, and literally carries its waters out on to the tableland, where at the time of this trial the waters divided, some of them flowing northwestwardly into Rhine Creek and others southwestwardly into Six Mile Creek. It appears without dispute that in the early days placer mining operations were carried on upon the upper stretches of McKay Creek, and the tailings and other debris were carried down to the tableland, forming a deposit termed an alluvial fan or land delta. Because of the level character of this tableland and these obstructions, the waters of McKay Creek have from time to time divided, forming numerous channels, some of which lead into Rhine Creek and others into Six Mile Creek. It is the contention of respondents that originally McKay Creek was the upper portion of Six Mile Creek, and that, but for artificial obstructions placed in its channel, would convey all of its waters into Six Mile Creek. On the other hand, it is the contention of appellant Price that McKay Creek is now, and always has been, the upper portion of Rhine Creek and, if unobstructed, would convey all of its waters, or at least the major portion thereof, into Rhine Creek.

Several witnesses testified in support of the one contention, [1] and about an equal number in support of the other. Among the witnesses on either side of the controversy were men who were in the neighborhood in early territorial days, before there were any settlers except the placer miners. Their opportunities for observation were not unequal, and

apparently every one was prompted by a desire to tell the truth. Lapse of time and the frailty of memory alone must account for the irreconcilable conflict in the testimony. The trial judge had the distinct advantage over the members of this court, in that he heard the witnesses testify, observed their demeanor on the stand, and made personal inspection of the premises in question before a determination was had. Under these circumstances we cannot substitute our judgment upon the weight of the evidence for his, even though upon the dead record we might be disposed to favor a different result. The burden is upon the appellant to show that the evidence preponderates against the finding. (*Mason* v. *Swee,* 60 Mont. 32, 198 Pac. 356; *Noyes Estate* v. *Granite-Alaska Co.,* 64 Mont. 406, 210 Pac. 96.) It is the rule that whenever the evidence furnishes reasonable grounds for different conclusions, the findings of the lower court will not be disturbed. (*Nolan* v. *Benninghoff,* 64 Mont. 68, 208 Pac. 905.)

2. John McKay made an appropriation of the waters of [2, 3] McKay Creek in 1883, and by mesne conveyance that right, if still existent, passed to defendant Price in 1909. In its findings and decree the trial court ignored the McKay appropriation altogether, and the act can be defended only upon the theory that the appropriation had been abandoned prior to the time when Price assumed to succeed to it. We think it may be said fairly that the evidence establishes these facts: From 1885 to 1889 McKay was engaged in placer mining along McKay Creek, on section 16 on the tableland, and in the gulch at the head of the undisputed portion of Rhine Creek; that he used about 75 inches of the waters of McKay Creek in his operations; that he staked out a mining claim in Rhine gulch, but made no record of his location, and that he conveyed the McKay water to Rhine gulch by means of a ditch which he constructed. About 1889 he left Montana and went to California, where he died a few years later. In the meantime, in 1891, he conveyed the water right to Catherine Quigley, and thereafter the chain of title is represented by these transfers: Catherine Quigley to R. J. Quigley in 1903;

R. J. Quigley to Parker and Price about 1905; Parker and Price to J. R. Quigley in 1907; J. R. Quigley to J. Catherine Quigley in 1907; J. R. Quigley and Catherine Quigley, his wife, to Price in 1909. The Quigleys were in possession of section 16 in 1892 or 1893 and some mining operations were carried on by using the McKay ditch and water right, but not after 1896. The Quigleys were using the McKay right for irrigating in 1892 or 1893, and were using the same right for the same purpose from 1900 to 1905. Since 1909 Price claims to have used the same right for irrigating purposes.

Neither the change in the place of diversion nor the change in the use of the water from mining to agriculture, or *vice versa,* affected the appropriation made by McKay. This has been the rule in this jurisdiction from early territorial days (*Woolman* v. *Garringer,* 1 Mont. 535), and since 1885 has been so declared by statute (Laws of 1885, p. 131; sec. 1252, Div. 5, Comp. Stat. of 1887; sec. 1882, Civil Code of 1895; sec. 4842, Rev. Codes of 1907; sec. 7095, Rev. Codes of 1921.) It is equally well established that the appropriation was not impaired by the fact that neither McKay nor the Quigleys held the legal title to the premises upon which the water was used. (*Toohey* v. *Campbell,* 24 Mont. 13, 60 Pac. 396; *Bailey* v. *Tintinger,* 45 Mont. 154, 122 Pac. 575.)

As observed before, the trial court did not mention the Mc-
[4]   Kay appropriation in its findings or decree, but since the issue of abandonment was raised and a finding upon it was necessary to the determination of the case, a finding that the appropriation was abandoned must be implied. (*Bordeaux* v. *Bordeaux,* 32 Mont. 159, 80 Pac. 6.) Abandonment is a question of fact, to be determined as other questions of fact (sec. 7094, Rev. Codes 1921), and if there were any substantial conflict in the evidence upon this issue we would be influenced by the trial court's implied finding; but there is not any conflict, and, as far as this issue is concerned, it might as well have been submitted upon an agreed statement of facts. The facts appearing from the record are very meager indeed. So far as disclosed by the record, McKay made no use of the water

[5]   or ditch from the time he left Montana in 1889.   The Quigleys succeeded to the right in 1891, and used the water for irrigation purposes in 1892 or 1893, and again from 1900 to 1905.   The water was used for mining during the 90's, but just when or by whom does not appear.   It may be said, then, that the evidence fails to disclose that any use was made of the McKay right during these periods—from 1889 to 1892, from 1893 to 1900, and from 1905 to 1909.   Beyond the bare fact of this nonuser and the fact that McKay left the state in 1889 and did not return, the evidence does not go.   Can it be said, then, as a legitimate inference from these facts, that the McKay appropriation was abandoned prior to 1909?   We think not.   The earliest appropriation made by any of these respondents dates from May 15, 1896, so that the question of abandonment prior to that date cannot arise in this action; in other words, until another right was initiated, no one was in a position to question the validity of the McKay appropriation.   (*Tucker* v. *Jones,* 8 Mont. 225, 19 Pac. 571; *Beaver Brook Reservoir Co.* v. *St. Vrain Reservoir Co.,* 6 Colo. App. 130, 40 Pac. 1066; 1 Wiel on Water Rights, 3d ed., sec. 567.)

We have, then, for consideration the question of abandonment as reflected by the evidence of nonuser from 1893 to [6-9]   1900, and from 1905 to 1909.   To constitute abandonment there must be a concurrence of act and intent—the relinquishment of possession and the intent not to resume it for a beneficial use (*Featherman* v. *Hennessy,* 42 Mont. 535, 113 Pac. 751; 1 Wiel on Water Rights, sec. 567 above). Abandonment is always a voluntary act, and it is a principle, quite uniformly recognized, that when once an appropriation of water has been completed, the courts will not lightly decree an abandonment of a property so valuable in a semi-arid region such as this (*Miller* v. *Wheeler,* 54 Wash. 429, 23 L. R. A. (n. s.) 1065, 103 Pac. 641; 3 Farnham on Waters, sec. 691). Neither an intention to abandon nor nonuser is sufficient; the union of both is indispensable to constitute abandonment (*Utt* v. *Frey,* 106 Cal. 392, 39 Pac. 807; 1 Wiel on Water Rights,

sec. 567 above). In principle, that rule has been declared so often by this court that it is unnecessary now to do more than cite a few of the leading cases. (*Atchison* v. *Peterson,* 1 Mont. 561; *McCauley* v. *McKeig,* 8 Mont. 389, 21 Pac. 22; *Gassert* v. *Noyes,* 18 Mont. 216, 44 Pac. 959; *Sloan* v. *Glancy,* 19 Mont. 70, 47 Pac. 334; *McDonnell* v. *Huffine,* 44 Mont. 411, 120 Pac. 792; *Lowry* v. *Carrier,* 55 Mont. 392, 177 Pac. 756.)

While it is true that nonuser for a considerable period of time may be some evidence of an intention to abandon the right, such nonuser alone, even for a period exceeding the statute of limitations, is not conclusive in this state. (*Smith* v. *Hope Mining* Co., 18 Mont. 432, 45 Pac. 632.) The authorities are all of one accord in holding that the party claiming abandonment has the burden of proving his contention by a preponderance of the evidence, and that to establish abandonment the evidence to that effect should be clear and definite. (1 Wiel on Water Rights, sec. 567 above.)

As we understand this record, there is not any evidence of abandonment except the bare fact of nonuser; while, on the contrary, the resumption of the use of the water in 1900 is some evidence, however slight, that the owners did not intend to abandon the appropriation by their failure to employ it from 1893, and the sale of the right to Price for a valuable consideration in 1909 is some evidence that they had not abandoned it in 1905. (*Middle Creek Ditch Co.* v. *Henry,* 15 Mont. 558, 39 Pac. 1054.) Our conclusion upon this branch of the case does not conflict with the decision in *Davis* v. *Gale,* 32 Cal. 27, 91 Am. Dec. 554, relied upon by counsel for respondents. In that case it appeared that the appropriation upon which plaintiff relied was made in March or April, 1851, and was sold in 1855. In the meantime the appropriation claimed by defendant had been made in August or September, 1851. Under these circumstances the court was probably justified in saying: "The fact that the water was appropriated solely for a special and particular purpose, and the further fact that that purpose had been fully accomplished, and the further fact that the parties concerned in it had dispersed to

other parts, and that more than two years were allowed to pass without their giving any attention to the ditch, and then only to make a sale of it to others at the nominal sum of $25, all bear directly on that question.   In view of those facts, a jury might find abandonment."

A new trial is unnecessary, and the order refusing it will be affirmed.   The cause is remanded to the district court, with directions to modify the findings and decree by substituting for the appropriation of 100 inches made to defendant Price as of June 1, 1905, an appropriation of 75 inches of the waters of McKay Creek as of 1883, and, when so modified, the judgment will stand affirmed.

*Remanded, with directions.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.

Rehearing denied March 26, 1923.