THE HONORABLE J. CHAN ETTIEN, DISTRICT *439 JUDGE,
dissenting:
I dissent.
At a time when the fixing of Montana water rights is in a transitional stage, the Court is overturning a rule which has been an integral part of Montana water law for almost 100 years. Tucker v. Jones (1888), 8 Mont. 225, 230, 19 P. 571.
That rule is: “non-use standing alone is not sufficient to establish abandonment of a water right.”
Mere lapse of time during which there is no use does not constitute abandonment without proof of a clear intention to abandon. Musselshell Valley Farming & Livestock Co. v. Cooley (1929), 86 Mont. 276, 283 P. 213; Moore v. Sherman (1916), 52 Mont. 542, 159 P. 966; Featherman v. Hennessy (1911), 42 Mont. 535, 113 P. 751; Tucker v. Jones, 8 Mont. at 225, 19 P. 571. Abandonment must include proof of intent to abandon. Tucker v. Jones, supra; McCauley v. McKeig (1889), 8 Mont. 389, 21 P. 22. There must be concurrence in relinquishment of possession and intent to abandon. Thomas v. Ball (1923), 66 Mont. 161, 213 P. 597. See also, Irion v. Hyde (1938), 107 Mont. 84, 81 P.2d 353. The requirement of intent to abandon is a cardinal principle of Montana water law, which has been upheld by the courts and relied upon by Montana’s farmers and ranchers for over a century.
The 1973 Water Act provides for adjudication of all water rights claimed before July 1, 1973, to be determined under the statutory and case law applying to appropriation and use of water rights before that date.
MCA 85-2-404 relating to abandonment under the 1973 act stated that: MCA 85-2-404 “. . . does not apply to rights until they have been determined in accordance with . . .” the water law in existence prior to July 1, 1973.
On July 1, 1973, the rule was that nonuser alone was not sufficient to establish abandonment of a water right. To me, it is clear the legislature wanted the status quo on pre-July 1, 1973, water law to be maintained until water rights were established under the 1973 Act. Overturning a 100 year rule *440 is not maintaining the status quo.
Beginning with the effective date of the 1973 Water Act, this writer, in his practice of law, and I am sure other attorneys in theirs, began to be consulted by farm and ranch people on their water rights. It was not unusual that an old appropriation and irrigation system was present, but had not been in use for many years, twenty, thirty, forty, fifty years or more. It was my advice, and I’m sure the advice of my professional colleagues, to file a claim of right based on such appropriation. Such advice was grounded on the rule that nonuse standing alone could not constitute the abandonment of a water right. Claims were made and filed with the water courts on the strength of the ancient law.
Back in the 1960’s, the State Water Conservation Board made a water resource survey of the state. The survey covered the history of land and water use in irrigated areas, maps showing irrigated areas, and water right data of appropriation and decrees for each county. It is common for the maps to show ancient irrigation works “not in use,” but which had had water applied by those works to irrigation.
It is my understanding that such ancient irrigation works were mapped because of the longstanding rule against abandonment being determined solely by nonuse. Many old nonuse systems were worked into claims filed with the water court as existing rights.
In 1980, this Court was faced with Holmstrom LD. Co. v. Meagher County, et al. (1980), Mont., 605 P.2d 1060, 36 St.Rep. 1903. The particular right in question involved an earlier conveyance of 337 inches of water separate and apart from land. The grantees had twenty acres of land subject to irrigation and eighty inches of the 337 inch conveyance applied. The 257 inch balance was never used. This Court found, under the circumstances, that the unused 257 inches had been abandoned by nonuse, saying: “Seventy-five years of non-use is sufficient to provide ‘clear evidence’ of abandonment.”
It is well at this stage to again point out that a water right *441 is subject to transfer separate and detached from land, as well as being transferred with the land. Yellowstone Valley Co. v. Associated Mortgage Investors (1930), 88 Mont. 73, 290 P. 255; St. Onge v. Blakely (1926), 76 Mont. 1, 245 P. 532.
The former is the circumstance of Holmstrom.
A water right, the use of which has been applied to land, becomes appurtenant to that land. Tucker v. Jones, supra.
Nonuser of an unattached right cannot become vested because it has not been applied beneficially with a reasonable time of its acquisition. For example, a water company has an unattached right which must be applied beneficially within a reasonable time, whether it be for irrigation, domestic, commercial or industrial use, or it may be lost. Baily v. Tintinger (1911), 45 Mont. 154, 177-178, 122 P. 575.
In our case, both types of transfer are present. The 79 Ranch claim was by reason of Yellowstone LD.Co.’s conveyance of Section 25 with an appurtenant 83.33 inches of the Mont. Cattle Co. right.
Pitsch claims 166.66 inches, unattached, dated June 1, 1912, of the Mont. Cattle appropriation by reason of Yellowstone LD.’s conveyance of Section 35 and 166.66 inches of the Mont. Cattle appropriation to Claude Hill. Evidence indicated about 74.3 acres was irrigated in the 1920’s in the northern part of Section 35. Thus, we have a situation where about 92.3 inches of the Yellowstone LD. transfer was never used for a period of over seventy-five years.
Holmstrom fails to consider its effect on mining rights.
Locators of lode claims often located a millsite is conjunction with their claims, and appropriated water for the operation of their mill. The vagaries of mineral prices have often left these properties inoperable, though ownership was maintained. There are patented and other lode claims which, with their millsites, have not operated for periods up to fifty, sixty, or seventy years, but have potential, given the right economic conditions.
*442 Placer operations appropriated water to wash gold or gem bearing gravels. Many such ventures have been down for long years because economic conditions have not justified operation.
It is no argument to say seventy-five years or so of nonuse is abandonment, because it is obvious in such mining situations the owners intend to use the water right in mining operations at some time.
The majority cites Smith v. Hope Min. Co. (1896), 18 Mont. 432, 45 P. 632, in support of its position. The case is to the contrary.
The Hope and Algonquin companies were silver producers at Philipsburg, Montana, which had settled their water rights from Frost Creek. With the demonetization of silver, the Algonquin mill shut down but was kept under maintenance and security for nine years or more. It was argued that the Algonquin had abandoned its water right by the nine year nonuser.
The Court prefaced its remark quoted by the majority here by citing the accepted rule: “. . . mere rionuser of a water right is not an abandonment.” Smith v. Hope Min. Co., 18 Mont. at 439, 45 P.632, and followed the majority quote with these words:
“It cannot be contended for a moment that there was a scintilla of evidence tending to prove that the Algonquin Company intended to abandon the mill. Every act shows that they did not so intend. They did not use the water, simply because* the machinery of the mill was not in motion. When it thus appears that the intention was clearly not to abandon the principal estate (that is, the mill), we cannot hold that the fact of temporary and necessary nonuser of the appurtenance (that is, the water) was any evidence whatever of an intent to abandon that appurtenance. The appurtenance was a necessity to the mill, and the intention to abandon that appurtenance must clearly appear. (See cases last cited.) We think the contrary clearly appears in this case. If we sustain the finding of the District Court *443 as to the abandonment, it would be holding, in practical affairs, to this effect, viz., that if, through the vicissitudes of mining, a company finds itself obliged to close its mill for a considerable period, — a period as long as the statute of limitations, — then, in order to preserve the water right appurtenant to the mill, they will not be permitted to allow the water to remain idle, but must continue its use. To continue its use they must keep the machinery of the mill moving. These views lead into absurdities. They simply demonstrate that, if a milling or mining company is obliged to close its mill, and thus cease the use of its water right for a period equal to the statute of limitations, it will by such an act be deemed to have abandoned the water right, which is an absolutely necessary appurtenance to the mill. We cannot subscribe to any such doctrine as this.”
One wonders what the Anaconda’s situation will be with its water right appurtenance to its smelter and concentrator at Anaconda if it carries out its announced intention to raze those properties to the ground.
It is safe to say that the present owners of the Hope and Algonquin properties are holding their lode claims and mill-sites, even though the mills are long gone, looking to the day of profitable operation, and still claim their appropriations to their millsites.
Nor, is there prejudice to junior users, because use of the water is rightfully theirs if the senior right is not being used. It is the history of Montana water that, if there is a use for it, it will be used. The water will be of benefit to someone.
Judge McKinnon, in finding abandonment of the Montana Cattle Co. 1983 right must have relied on Holmstrom. There is no other basis for such ruling.
To affirm effects destruction of the old rule. The old rule had the quality of being in black and white; there was no in-between. Everyone understood. This Court has now introduced confusion and chaos to the 1973 Act. In the next few years water judges are going to be considering water *444 claims reflecting various periods of nonuser.
Under Holmstrom and the present case, where is the cutoff which says a given period constitutes abandonment?
We have four water judges. Is this Court going to give direction to the problem of nonuser, or, will each water judge be free to establish his own cut-off rule?
The old rule should be kept because it is of even application to all, and everyone is familiar with it.
Holmstrom is easily distinguishable. It had a detached right and its purchaser was bound within a reasonable time to apply it to identifiable land. Bailey v. Tintinger, supra. He made no effort to apply more than eighty inches to his land. A failure to apply an unattached water right to use within a reasonable time after acquisition is sustainable evidence of intent to abandon. On the other hand, an extended nonuse of water to land to which it is appurtenant is not alone evidence of intent to abandon.
The present case has both situations.
Under the evidence in this case, I would find:
(1) Under the old rule, that there has not been abandonment of the one-sixth of the 1893 right appurtenant to Section 25-5-19 as claimed by 79 Ranch, and that it was entitled to one-sixth or 83.3 inches of the 1893 right;
(2) that 74.3 inches of the one-third 1893 right conveyed to Claud Hill thence to Pitsch was applied to the northern part of Section 35-5-19, and had not been abandoned;
(3) that 92.36 inches of the 1893 right conveyed to Hill along with Section 35 had not been used, and was abandoned; and
(4) that the Vandervoort right be affirmed, it being shown that Vandervoort’s undisturbed possession and use was for a period of time in excess of the time necessary to acquire title by prescription, standing alone, and was sufficient to vest right to use of water as of 1924. Cook v. Hudson (1940), 110 Mont. 263, 281, 103 P.2d 137.