No. 90-468

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN THE MATTER OF THE ADJUDICATION OF
THE EXISTING RIGHTS TO THE USE OF ALL
THE WATER, BOTH SURFACE AND UNDERGROUND,
WITHIN THE MUSSELSHELL RIVER DRAINAGE AREA
ABOVE ROUNDUP, INCLUDING ALL TRIBUTARIES
OF THE MUSSELSHELL RIVER ABOVE ROUNDUP
IN WHEATLAND, GOLDEN VALLEY, MEAGHER,
FERGUS, MUSSELSHELL, SWEET GRASS, PARK,
YELLOWSTONE, and STILLWATER COUNTIES,
MONTANA.

        CASE NO.: 40A-48C

APPEAL FROM:   The Water Courts of the State of Montana,
               The Honorable Bernard W. Thomas, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

            Laurence R. Martin and Sol Lovas, Felt, Martin,
            Frazier & Lovas, Billings, Montana

        For Respondent:

            John R. Christensen, Christensen & Hubble, Stanford,
            Montana

        For Amicus Curiae:

            Faye Bergan, Legal Counsel, Dept. of Natural
            Resources & Conservation, Helena, Montana

FILED

OCT 8 - 1992

Ed Smith
Filed CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: September 10, 1992

Decided: October 8, 1992

_____
              Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Rueben C. and Lavone M. Pitsch appeal from an adjudication of water right claims in Big Coulee Creek, a tributary of the Musselshell River, by the Montana Water Court, the Honorable Bernard W. Thomas presiding. We affirm.

We address the following issues on appeal:

1.  Did the Water Court err in determining that the 1893 and 1921 water rights claimed by appellants were abandoned?

    a.  Should this Court expressly overrule 79 Ranch?

    b.  Did the Water Court err in its application of 79 Ranch?

2.  Did the Water Court err in determining that the claimed 1973 water right was not perfected?

3.  Are appellants entitled to a 1976 priority date for water applied to a beneficial use?

This is the third occasion on which the water right claims of Rueben and Lavone Pitsch have been appealed to this Court. For the most part, the claims before us originally went to trial in 1979 and appealed. We vacated and remanded in 79 Ranch, Inc. v. Pitsch (1981), 193 Mont. 229, 631 P.2d 690, and findings of fact, conclusions of law and judgment on remand were entered in 1982. The case was appealed again and resulted in our decision in 79 Ranch, Inc. v. Pitsch (1983), 204 Mont. 426, 666 P.2d 215, in which we affirmed in part and remanded for modification. A modified decree and judgment was entered on August 22, 1983.

Before the earlier proceedings finally had been resolved in

August, 1983, Pitschs filed five Statements of Claim pursuant to Montana's 1973 Water Use Act. The Water Court consolidated the claims of existing water rights in Big Coulee Creek, a tributary of the Musselshell River, asserted by Pitschs and other parties into Case No. 40A-48C. Claims by Eugene and Lois Schaff, Warren Sillivan and Coulee Hill Ranch, Inc., Chris and Betty Schaff and appellants Pitschs, as well as objections to those claims, were tried beginning February 8, 1990.

After hearing, the Water Court ruled on the water right claims before it. With specific regard to appellants, the court determined that their one-third interest in the 1893 Montana Cattle Company water right (Claim No. 45635) had been perfected for 131 acres, but abandoned by their predecessors in interest. In addition, the court ruled that a 1921 Notice of Appropriation (Claim No. 45634) had been perfected for 23.5 acres, but abandoned, and that another 1921 Notice of Appropriation (Claim No. 45632) was not perfected or, if perfected, was abandoned. The court further determined that a 1953 irrigation right based on a reservoir right (Claim No. 182127) was not perfected. Finally, the court determined that appellants' claim based on their predecessors' 1973 Notice of Appropriation (Claim No. 45633) was not perfected by reason of lack of reasonable diligence in putting the water to beneficial use.

This appeal followed entry of judgment and certification pursuant to Rule 54(b), M.R.Civ.P. We note at the outset that only the Pitschs appeal from the judgment of the Water Court and that

3

they do not appeal the Water Court's determination that the asserted 1953 irrigation right was not perfected.

1. Did the Water Court err in determining that the 1893 and 1921 water rights claimed by appellants were abandoned?

Appellants argue two separate issues in support of their contention that the 1893 and 1921 water rights were not abandoned. First, they argue that this Court should expressly overrule 79 Ranch, Inc. v. Pitsch (1983), 204 Mont. 426, 666 P.2d 215 (hereafter 79 Ranch). Second, they argue that, in any event, the Water Court erred in its application of 79 Ranch to the facts of their water right claims. We will address these issues separately.

a. Should this Court expressly overrule 79 Ranch?

Appellants assert that our decision in 79 Ranch in 1983 and our subsequent decision in E.E. Eggebrecht, Inc. v. Waters (1985), 217 Mont. 291, 704 P.2d 422, have resulted in an irreconcilable conflict in the law of abandonment in Montana. We disagree.

79 Ranch addresses the question of abandonment of claimed water rights. Eggebrecht addresses the extent and abandonment of an easement by grant and decides only the narrow issue of who has standing to raise the issue of abandonment of such a grant originally made by the United States. The two interests are separate and distinct and the distinctions between the two form the basis for the difference in legal approach to questions regarding them, including the question of abandonment.

Montana law has long recognized that water rights and easement rights such as ditch rights are distinct interests which can be

4

conveyed separately and abandoned separately. See McDonnell v. Huffine (1912), 44 Mont. 411, 120 P. 792. The controlling principle upon which water "rights" in Montana are perfected and continue to possess legal validity is that of beneficial use; water rights cease when the water is no longer applied to a beneficial use. Power v. Switzer (1898), 21 Mont. 523, 55 P. 32; 79 Ranch, 204 Mont. at 431-32. Water rights are thus inherently different from other rights or interests not fundamentally premised or conditioned on use of the particular right or interest; necessarily, then, abandonment of a water right is a question distinct from abandonment of a right created in a different manner.

In this regard, Montana's law on abandonment of water rights has a long and evolutionary history. See, e.g., Smith v. Hope Mining Co. (1896), 18 Mont. 432, 45 P. 632; Moore v. Sherman (1916), 52 Mont. 542, 159 P. 966; Thomas v. Ball (1923), 66 Mont. 161, 213 P. 597; Shammel v. Vogl (1964), 144 Mont. 354, 396 P.2d 103; Holmstrom Land Co. v. Meagher Cty. Newlan Creek (1979), 185 Mont. 409, 605 P.2d 1060; 79 Ranch (1983); § 85-2-404, MCA. Appellants correctly assert that our decision in 79 Ranch was a change in the law of abandonment of water rights. Given Smith and Holmstrom, however, both of which held a long period of non-use of water rights to be "strong evidence" of intent to abandon, it was not the "stunning reversal" appellants assert it to be.

Eggebrecht did not relate to water rights or abandonment of water rights. There, a reservoir right of way by grant was acquired from the United States under federal law authorizing such

5

grants on public land of ground occupied by certain ditches, canals or reservoirs. Relying on City of Billings v. O.E. Lee Co. (1975), 168 Mont. 264, 542 P.2d 97, we stated in Eggebrecht that "mere non-use of an easement by grant, no matter how long continued, does not constitute abandonment." Eggebrecht, 217 Mont. at 295. (Emphasis supplied.) The statement clearly encompassed easements by grant only; as noted above, the creation and continued existence of such an interest is not analogous to the creation and continued existence of a water right in Montana. If anything, the easement by grant in Eggebrecht might be analogous to a ditch right by grant, rather than to a water right.

79 Ranch and Eggebrecht are not in conflict. Nor, given the differences between water rights and easements by grant, is there any reason that Montana law on abandonment of those interests should be identical.

Appellants also contend that our 79 Ranch decision, insofar as it relates to a rebuttable presumption of abandonment, violates the Montana Constitution. Their constitutional argument is based in large part on sweeping statements as to the extent and effect of our holding which are simply incorrect and of other matters which do not appear of record.

We do not address these statements in any detail. Building on our holdings in Smith and Holmstrom that a "long period of nonuse is strong evidence of an intent to abandon the water rights," we went on in 79 Ranch to conclude that "[i]n effect, such a long period of continuous nonuse raises the rebuttable presumption of an

6

intention to abandon, and shifts the burden of proof onto the nonuser to explain the reasons for nonuse." 79 Ranch, 204 Mont. at 432-33. We said no more than this.

Appellants quote Article IX, Section 3(1) of the 1972 Montana Constitution, which recognizes and confirms "existing rights to the use of any waters for any useful or beneficial purpose. . . ." They construe that provision as prohibiting the state, whether through the legislature or this Court, from any post-1972 actions which could negatively impact in any way on pre-1972 water rights. We previously have rejected similar constitutional arguments regarding legislative changes in Montana water law since the 1972 Constitution. We reject them here as they relate to state action via decisions of this Court.

As discussed above, valid and existing water rights in Montana have long been premised on beneficial use. These are the "existing rights" that the 1972 Constitution recognizes and confirms, and we have held that that "constitutional recognition of water rights is effective and will be sustained." McDonald v. State (1986), 220 Mont. 519, 722 P.2d 598. We specifically recognized that the State's ability to affect existing and recognized water rights survived the adoption of Article IX, Section 3(1), of the 1972 Montana Constitution. Dept. of State Lands v. Pettibone (1985), 216 Mont. 361, 702 P.2d 948. Indeed, earlier this year, in considering an abandonment issue under the 1973 Water Use Act, we determined that the constitutional recognition of existing water rights "does not establish that pre-1973 water rights are immune

from sovereign powers." Matter of Adjudication of Yellowstone River Water Rights (Mont. 1992), 832 P.2d 1210, 1214, 49 St.Rep. 413, 415. While those rights are "protected against unreasonable state action[,] . . . they have not been granted indefeasible status." Id. We concluded that "consistent with Article IX, Section 3(1), of the Montana Constitution, the State Legislature may enact constitutionally sound regulations including the requirement for property owners to take affirmative actions to maintain their water rights." Id.

We adopt the foregoing rationale as it applies to our "rebuttable presumption of abandonment" holding in 79 Ranch. Requiring a water right claimant to explain the reasons for a long period of continuous non-use of water is a constitutionally permissible affirmative action, particularly when the action required is but an incremental change from the earlier rule that long period of non-use is "strong," "potent," or "clear" evidence of an intent to abandon. Indeed, 79 Ranch is akin to a caveat to claimants that they should not rest their case without addressing the potent evidence of intent to abandon which arises from a long period of non-use. We hold, therefore, that our decision in 79 Ranch does not violate Montana's constitutional provision recognizing and confirming existing water rights.

b. Did the Water Court err in its application of 79 Ranch?

The Water Court found that the 1893 Montana Cattle Company water right was applied to irrigation via 393 acres of land between

1893 and 1912; thus, the water right was perfected. Thereafter, no irrigation of any kind based on this water right occurred for at least forty years. The Water Court found, under 79 Ranch, that appellants failed to show reasonable cause for non-use of the water for the forty year period and, thus, that the right had been abandoned.

Similarly, the Water Court found that the claimed water right based on a March 22, 1921, Notice of Appropriation filed by Claude Hill, appellants' predecessor in interest, was put to beneficial use. The court further found, however, that the water was not used for a period of some forty years and that appellants failed to show reasonable cause for non-use over that period. Finally, as to appellants' claimed water right based on a Notice of Appropriation filed in September, 1921, by Claude Hill and others, the court found that appellants failed to prove that the water was ever put to beneficial use on the sections specified in the Notice of Appropriation. In the alternative, the court found that, if the water ever had been put to beneficial use, the right was abandoned through non-use for more than forty years and appellants' failure to establish reasonable cause for the non-use.

Appellants assert that they presented sufficient evidence to explain the reasons for non-use under 79 Ranch. According to appellants, the Water Court erred in concluding that we had held "that broad claims such as [ditches blowing shut, lack of money, the depression, the war, the need for cooperation to restore the ditches and the lack of water], unsupported by specific evidence,

9

are not sufficient to rebut the presumption."

Appellants are technically correct. We did not have before us in 79 Ranch the variety or number of "broad claims" subsequently presented to the Water Court at the trial of this case; thus, it might be said that the Water Court characterized our statement in 79 Ranch too broadly. Nevertheless, the Water Court correctly applied the thrust of 79 Ranch to the facts before it.

In 79 Ranch, the only evidence before us in rebuttal of the presumption of abandonment was Pitsch's argument that his predecessors in interest did not have sufficient funds to irrigate. We concluded that "[s]uch a broad claim, unsupported by more specific evidence, is not sufficient to rebut the presumption of abandonment." 79 Ranch, 204 Mont. at 433. We relied on In re CF & I Steel Corporation v. Purgatoire River Water Conservation District (Colo. 1973), 515 P.2d 456, for the principle that some fact or condition excusing long periods of non-use must be established to rebut the presumption, not mere expressions of desire or hope. Id. With specific regard to Pitsch's "lack of sufficient funds" argument, we also found the Colorado Court's reasoning persuasive:

> "Considering the large demands for all of the appropriatable water in this state . . ., it might be said that nearly every abandoned water right could have its non-use justified by the economics that might prevail sometime in the future for use of this water. . . . This gleam-in-the-eye philosophy is not consistent with the protection and preservation of existing water rights."

79 Ranch, 204 Mont. at 433-34; citing CF & I, 515 P.2d at 458.

With 79 Ranch clearly before us, we have scrutinized the

10

entirety of the record in the case. Appellants presented general evidence of a variety of negative factors in an effort to span a period of non-use from at least the 1920s to 1976: dry conditions in the 1920s; the "dust bowl years" of the 1930s; the depression; World War II; blown-in ditches; lack of water; lack of money; and the need for cooperation to restore a lengthy series of ditches to operating condition. As presented, the evidence generally encompassed the Big Coulee area and was not specific to the acreage to which the claimed water rights related. In addition, the evidence was nearly all conclusory in nature; that is, the evidence was that certain spans of years were "pretty dry," "most people" did not have sufficient funds to reopen ditches, and so on. Specific evidence explaining or excusing the long period of non-use of the particular water rights on the specific property was lacking. In addition, evidence was presented by other parties that sufficient water was available for irrigation from Big Coulee in some years, that portions of the blown-in ditches were easily opened and thereafter utilized, and that at least one property was irrigated from Big Coulee Creek every year there was water from 1941 to 1990.

We agree with appellants' argument that a person cannot put water to beneficial use when there is no water available. The record here reflects, however, that some quantity of water was available for irrigation from Big Coulee Creek for many, if not most, of the years at issue here. The overall impression from the record is that much farming in the Big Coulee area was dry land

farming and that the farmers there were little interested in irrigation. In any event, appellants presented no specific evidence establishing any fact or condition sufficient to excuse the long period of non-use, as required by 79 Ranch.

Appellants' reliance on Hallenbeck v. Granby Ditch and Reservoir Company (Colo. 1966), 420 P.2d 419, is misplaced. In Hallenbeck, the issue was whether the Granby Ditch and Reservoir Company had made a sufficient showing to rebut the presumption of abandonment of storage rights in a number of reservoirs. The Colorado Court stated that "a reasonable justification for non-use may very well exist where it can be shown that economic, financial or legal difficulties or natural calamities prevented the storing of all the water that was originally decreed." Hallenbeck, 420 P.2d at 426 (citations omitted). The evidence showed that Granby was unable to keep the reservoirs in peak operating condition during the depression, but that it did keep parts of the reservoir system operating with specifically-proved expenditures of money. Evidence also indicated that material and engineering shortages during the war hampered operations, but that all of the reservoirs save one were used until 1945. Repairs on a dam on one of the reservoirs were prohibitively expensive as a result of U.S. Forestry requirements. However, increasingly larger amounts were spent on the remaining system from 1945 until 1961. On these facts, the Colorado Supreme Court affirmed the trial court's finding of insufficient facts to show intent to abandon.

Hallenbeck is distinguishable from the case before us. There,

Granby continued to use portions of its storage rights throughout the period. In addition, it presented specific evidence as to its continuing efforts to maximize operation of its reservoir system and its storage rights as well as specific evidence of the economic financial or legal difficulties or natural calamities which hampered its efforts.

Appellants presented no evidence of any effort whatsoever by their predecessors in interest to apply the claimed water rights to beneficial use. Nor did they present any specific evidence of obstructions to their ability to do so. When this case was last before us, we stated that Pitsch's argument that his predecessors did not have sufficient funds to irrigate was too broad a claim, unsupported by more specific evidence, to rebut the presumption of abandonment. Appellants did not add any specific evidence in that regard. Overall, they presented merely a series of conclusory statements concerning a variety of negative factors spanning nearly fifty years. Based on the record before us and upon which the Water Court made its findings, we cannot say the Water Court erred in its findings or in its application of 79 Ranch.

2. Did the Water Court err in determining that the claimed 1973 water right was not perfected?

Appellants filed a Statement of Claim for an irrigation right, claiming 325.80 acres of irrigation use in sections 35 and 36, T5N, R19E, with a 1973 priority date. Appellants' claim was based on a Notice of Appropriation for irrigation use filed May 30, 1973, by their predecessors in interest Bert and Victoria Schaff. The water

was claimed by the Schaffs for use on the NW1/4 of section 35 and the NW1/4 of section 36, T5N, R19E and was never put to beneficial use by them.

Appellants purchased sections 35 and 36, T5N, R19E, including all water rights, from the Schaffs in August 1975. They first put water to beneficial use in July 1976, principally on land in the NE1/4 and S1/2 of section 35, T5N, R19E. The Water Court found, on these facts, that appellants failed to prove reasonable diligence on the part of their predecessors in interest in applying the 1973 water right to a beneficial use. Appellants argue that the court's finding of lack of reasonable diligence is error. As a result, according to appellants, the pre-1973 Water Use Act appropriation was perfected and their priority date relates back to the date of filing.

"'What constitutes due diligence is a question of fact to be determined by the court in each case.'" Mont. Dept. of Nat. R. & C. v. Intake Water Co. (1976), 171 Mont. 416, 434, 558 P.2d 1110, 1120 (citation omitted). Thus, our standard of review is whether the court's finding of fact is clearly erroneous. Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

In Intake Water Co., we cited Clark, Waters & Water Rights, Vol. 6, § 514.1, pp. 308, 309, as follows:

> "Diligence does not require unusual or extraordinary effort, but it does require a steady application of effort--that effort that is usual, ordinary and reasonable under the circumstances. * * * So long as the applicant prosecutes the construction of works in good faith with a steady effort, he should be held to have

14

prosecuted with diligence."
171 Mont. at 434. In that case, we determined that the applicant had met the diligence requirement. Appellants herein assert that that case is apposite here and mandates a reversal of the Water Court's finding. Appellants fail to take into account the significant factual differences between the two cases.

In Intake Water Co., the Notice of Appropriation was filed on June 8, 1973 and the water had not been put to beneficial use--indeed, construction of the diversion works had not begun--by the time the DNRC's declaratory judgment action was tried. The record reflected that the contemplated multi-million dollar project was of great complexity and magnitude which would require several years to complete even after the project was physically under way. The company was progressing toward removal of both actual and legal constraints arising out of the Yellowstone River Compact and several Montana statutes. In addition, actual construction of the diversion project could not begin until National Environmental Policy Act requirements were met and federal government approval was obtained. Under these facts, we held that the statutory language did not require "commencement of actual on-site excavation or construction of the diversion works, but that it encompasses the steady on-going effort in good faith by Intake to prosecute the construction of the project. . . ." Intake Water Co., 171 Mont. at 436.

In the case before us, appellants' predecessors in interest filed the Notice of Appropriation in May, 1973. Bert Schaff

15

ordered an irrigation system that year, laid out pipe in the fields and bulldozed a site for his pump. Necessary parts for the irrigation system were not delivered. By the time he sold the property to appellants in August, 1975, Schaff had undertaken no additional efforts to obtain the parts to complete the irrigation system. Appellants subsequently put the claimed water to beneficial use in July, 1976, more than three years after the notice had been filed.

The record reflects no complexity, legal barriers or justifiable actual barriers regarding the contemplated irrigation project for which the 1973 Notice of Appropriation was filed, such as were present in Intake Water Co. Appellants' predecessors did not proceed with any steady on-going effort toward completion of their irrigation project after initial steps were taken. Substantial, credible evidence supports the Water Court's finding that appellants failed to prove reasonable diligence on the part of their predecessors in interest in applying the claimed 1973 water right to beneficial use. In addition, the court did not misapprehend the law; nor are we left with the conviction that a mistake has been committed. We hold that the Water Court's finding of lack of reasonable diligence is not clearly erroneous. Absent perfection of the 1973 Notice of Appropriation, appellants cannot now claim an existing pre-1973 water right. Holmstrom, 185 Mont. 430.

3. Are appellants entitled to a 1976 priority date for water applied to a beneficial use?

Appellants' final contention is that they are entitled to a 1976 priority date for the water they utilized under the 1973 Notice of Appropriation. We addressed this precise issue in 79 Ranch and address it again here only because of its importance in the on-going water rights adjudication and permit processes.

The Water Court determined that appellants acquired a different type of sprinkler system to put the water to beneficial use; further, they changed both the place of diversion and the place of use stated in the 1973 Notice of Appropriation. The court noted that these significant changes were "all indicative of a new appropriation" in 1976. Appellants' argument for a 1976 priority date apparently is based on this determination. They misapprehend the effect of the determination vis-a-vis the 1973 Water Use Act.

In essence, and notwithstanding the failure of their claim under the 1973 Notice of Appropriation, appellants' argument is that their claim still must be adjudicated under pre-1973 law. To accept this argument would be to ignore both the thrust and the specific requirements of the 1973 Water Use Act regarding new appropriations of water and to revert to pre-1973 law.

All new appropriations of water must be established through a water use permit system. Section 85-2-302, MCA. "A right to appropriate water may not be acquired by any other method. . . . The method prescribed by this chapter is exclusive." Section 85-2-301(3), MCA. These statutes are perfectly clear and clearly negate appellants' argument. In addition, this precise issue was addressed and decided in 79 Ranch. We refused to affirm the 1976

priority date established by the court for a new "use" right, noting the 1973 Act's "emphatic" statement that it contained the exclusive procedures for post-1973 acquisition of water rights and the absence of record support for compliance with those procedures. 79 Ranch, 204 Mont. at 436.

AFFIRMED.

_____
                                    Justice

We concur:

_____
_____
_____
_____
                Justices